Terminal Co. v. Jacobs.

TERMINAL COMPANY *v.* JACOBS.

(*Nashville.*   December Term, 1902.)

1. **NUISANCE.  Roundhouse for storage of engines is not a nuisance per se.**

A roundhouse of large capacity for the storage and safe keeping of locomotive engines, erected near the dwelling of another, is not of itself a nuisance.   (*Post, pp.* 733, 736.)

2. **SAME.  Landowner can not avoid liability by a lease to another, where the very existence of the thing let is a nuisance.**

Where a landowner erects or creates a nuisance upon his land, he can not rid himself of his liability arising therefrom by a lease of the property to another, for in such case the liability of a landowner rests upon the ground that the very existence of the thing constitutes a nuisance, the responsibility for which can not be shifted by a mere letting or contracting with another.*   (*Post, pp.* 734-735, 736-737.)

Cases cited and approved:   Rosewell *v.* Prior, 2 Salk., 459; s. c., 12 Mod., 639; Swords *v.* Edgar, 59 N. Y., 29; Rex *v.* Pedley, 1 Ad. & El., 822; Marshall *v.* Cohen, 44 Ga., 489; Irvine *v.* Wood, 51 N. Y., 224; Chicago *v.* Robbins, 2 Black, 418.

3. **SAME.  Same.  Where the nuisance is created by an improper use of a proper structure, the lessee alone is liable, and not the landowner.**

Where the structure or work, whatever it may be, is not of itself a nuisance, and where the lease is general in its character, if the use of such structure or work does not of neces-

---

*As to liability of landlord to third persons for nuisance on leased premises, see note to Lee v. McLaughlin (Me.) 26 L. R. A., 197.

Terminal Co. v. Jacobs.

sity make a nuisance, but after the lease it is used by the lessee so as to create one, the lessee alone is liable. If the landowner lets to another premises, not in themselves a nuisance, but which may or may not be used by the lessee so as to become a nuisance, and it is entirely at his option so to use them or not, and the lessor receives the same rent, whether they are so used or not, the lessor can not be made responsible for the act of his lessee. (*Post, pp.* 735-736, 739.)

Case cited and approved: Rich *v.* Basterfield, 4 C. B., 783.

4. **SAME. Same. Same. Same. Jury to pass upon question whether nuisance was created necessarily by ordinary use, or by improper use of the lessee.**

Where a roundhouse, or other building, was not a nuisance at the date of the lease, and only became one upon its use by the lessee, the liability of the owner would depend upon the fact to be passed upon by the jury under proper instructions, whether the nuisance complained of arose necessarily from its ordinary use or from its improper use, by the lessee. In the first instance he would be liable, and in the second, the lessee alone would be chargeable. For the rule is that, in order to charge the owner of the premises, the nuisance must necessarily result from the ordinary use of the premises by the lessee, or for the purposes for which they were let; and where the nuisance is created by the improper or negligent use of the premises by the lessee, he alone is chargeable for the damages resulting therefrom. (*Post, pp.* 737-738.)

5. **Same. Same. Same. Same. Reversible error to withdraw or reject evidence of lease of premises to another.**

In an action against the landowner to recover damages on the ground that a structure or building on the premises is a nuisance, where the structure or building is not of itself a nuisance, or the nuisance was not a necessary result of the construction thereof, it is reversible error to withdraw from the jury testimony that the defendant landowner did not control or operate the premises, or the buildings and structures thereon; and it is also reversible error to reject a lease contract offered as evidence to show the facts of the lease. (*Post, pp.* 738-739.)

Case cited and approved: Rich *v.* Basterfield, 4 C. B:, 783.

Terminal Co. v. Jacobs.

6. **EVIDENCE. Title or ownership can not be proved by reputation, when.**

In an action against the owner of a railroad roundhouse for damages resulting from a nuisance created by the alleged improper location and operation, or management thereof, and by the incessant noise of the locomotive engines housed therein, and by the smoke, gases, cinders and soot cast off by them, where the defense was that the roundhouse was occupied, managed and controlled by a lessee or tenant of the defendant, it is reversible error to allow the plaintiff, over the defendant's objection, to testify that said engines were by general reputation the property of the defendant, for such testimony is incompetent to prove title. (*Post, p.* 739.)

Cases cited and approved: Jones *v.* Jennings, 10 Humph., 428; Berniand *v.* Beecher, 76 Cal., 394.

7. **NUISANCES. Damages. Evidence. Erroneous admission of testimony as to damage to fee cured by proper instruction to jury that damage to use only could be considered.**

Where the owner and occupant of premises sued for damages resulting from a nuisance created by the improper location and operation or management of an adjacent railroad roundhouse, it is error to admit testimony as to the effect of the alleged nuisance upon the value of the property or of the fee; but where the trial judge instructed the jury that in the assessment of damages, should they find for the plaintiff, they might consider such things as affected the use of plaintiff's property as a residence or home, etc., considering the discomforts, annoyance, etc., which he may have suffered from the alleged nuisance, the objectionable testimony was practically excluded from the consideration of the jury, and the erroneous admission thereof was rendered harmless. (*Post, pp.* 739-740.)

Cases cited and approved: Railroad *v.* Church, 108 U. S., 317.

8. **NUISANCE. Corporations. Charter rights. Corporation is not exempt from liability for nuisances created by its improper use of roundhouse, authorized by its charter.**

A corporation authorized by its charter to acquire and hold at such places as it shall find expedient, all necessary real estate

on which to construct, operate and maintain terminal railroad facilities, appurtenances and accommodations, in selecting a place for its roundhouse, acts in a private capacity, and is responsible for the injurious consequences which may result from its improper use by it, for its charter gives it no right to enjoy its property at the expense of another's property, and in this respect it stands no higher than an individual, and is entitled to no superior rights or immunities, and such charter right is no defense in an action against it for damages resulting from a nuisance created by it in the improper use of its roundhouse and engines. (*Post, pp.* 740-743.)

Cases cited and approved: Hill *v.* Asylum, L. R., 4 B. Div., 433; Truman *v.* R. R., 25 Ch. Div., 423; Beseman *v.* R. R. (N. J. Sup.), 13 Atl. Rep., 167; R. R. *v.* Church, 108 U. S., 317; Cogswell *v.* R. R., 103 N. Y., 10.

**9.%MAXIM. Corporations. Maxim applicable to corporations as well as to individuals.**

The maxim, "So use your own as not to injure another's property," will be applied to a corporation as well as to an individual. (*Post, p.* 741.)

---

### FROM DAVIDSON.

---

Appeal in error from Circuit Court of Davidson County. J. A. CARTWRIGHT, Judge.

SMITH & MADDIN, for Terminal Company.

ANDERSON & GRISHAM and A. E. EWING, JR., for Jacobs.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

This action was instituted by the defendant in error, who owned and was in possession of a house and lot on Magazine street, in Nashville, to recover damages claimed to have been done to her property by the plaintiff in error by the alleged improper location of its roundhouse, and in its operation or management, in that the locomotives housed in it from day to day greatly annoyed her by their incessant noise, and also cast off dense volumes of smoke and great quantities of gases, cinders and soot, which were blown into and upon the premises of the defendant in error, inflicting serious injury upon her household furniture, destroying vegetation in her yard, and impregnating the atmosphere, so as to make her property practically uninhabitable.

The trial resulted in a verdict and judgment for the plaintiff below, and the case is now before us on various assignments of error.

In order to a proper understanding of these assignments, it is necessary to state that on the 21st of March, 1893, the Louiville & Nashville Terminal Company was granted a charter of incorporation by the State of Tennessee, by which it was authorized "to acquire and hold in this or any other State, at such place or places as shall be found by it expedient," all necessary real estate, "on which to construct, operate and maintain passenger stations, . . . office buildings, sheds and storage yards, . . . roundhouses and machine shops, . . . main and side

tracks, . . . and other terminal railroad facilities, appurtenances and accommodations suitable" to enable the company to perform promptly the work of receiving, delivering and transferring all passenger and freight traffic and otherwise discharging the duties and exercising the powers contemplated or given in the charter. Among the powers so granted was that to "lease to any railroad company or railroad companies its freight and passenger depot or station and its other terminal facilities at any place where the line or lines of said railroad company or companies may terminate or through which they may pass."

Acting within its charter, the plaintiff in error proceeded to acquire real estate in the city of Nashville, and to construct upon it a terminal station, including a roundhouse of large capacity for the storage and safe-keeping of locomotive engines, and afterwards, on the 15th of June, 1896, it executed a lease for the term of 999 years of all of its terminal property to the Louisville & Nashville Railroad Company and the Nashville, Chattanooga & St. Louis Railway, reserving to itself an annual rent therefor, and at once turned over its entire holdings to the possession and use of the lessees. Since the time of said lease, so far as the record shows, the plaintiff in error has exercised no control over the roundhouse, or any other part of the terminal property. On the contrary, it affirmatively appears that the whole has been under

Terminal Co. v. Jacobs.

the control of the two railroads, and their engines have occupied the roundhouse; and whatever nuisance may have been committed, so far as defendant in error is actively concerned, has been by them.

Without going into detail as to the evidence, it may be assumed that the verdict of the jury settled conclusively that by reason of the proximity of the roundhouse to the dwelling of the defendant in error, she suffered great discomfort from the noise made in the incoming and outgoing of the engines of these railroad companies, and loss as well as inconvenience, from the smoke, soot, cinders, and gases emitted by these engines. The fact is, the trial judge withdrew by his charge from the consideration of the jury every issue of fact save this: Was the operation of the roundhouse a nuisance? By their verdict, the jury have answered that it was.

It was not insisted in the court below, nor is it here, that the roundhouse was *per se* a nuisance. Nor could such insistence, if made, be sustained. The contention, instead, was, and is, that, having erected this building for the very use to which it was applied, and such use having proved to be a nuisance, the Louisville & Nashville Terminal Company is liable for the resulting damage to the property of the defendant in error, nowithstanding the lease. In other words, the insistence is that the erection of this building for the very use to which it was subsequently applied makes the terminal company lia-

ble for the alleged subsequent wrong of the lessees upon the ground that its leasing was an implied warrant or consent on its part to these lessees to appropriate it to such wrongful use. This was the view taken by the trial judge. As to this he said to the jury: "If the proof shows that such construction and leasing of the roundhouse of the defendant was for the very purpose for which it was operated, . . . and if the proof further shows that in its operation a nuisance was committed, and that plaintiff had thereby suffered hurt, worry and discomfort, inconvenience and damage, so as to injure the use of her property, then the defendant is liable." This view of the law is emphasized by being repeated at least in two other paragraphs of the charge.

There is no doubt that, should a landowner erect or create a nuisance upon his land, he can not rid himself of liability arising therefrom by a demise of the property to another. This was laid down as early as *Rosewell* v. *Prior*, 2 Salk., 459 (S. C. 12 Mod., 639), where it is said that: "Before his assignment over he was liable to all consequential damages, and it is not in his power to discharge himself by granting it over, more especially where he grants it over reserving rent, whereby he agrees with the grantee that the nuisance may continue and has a recompense, viz., the rent for the same."

This rule has been applied in the case of the owner of a pier, who leased it in a dangerous condition

Terminal Co. v. Jacobs.

(*Swords* v. *Edgar,* 59 N. Y., 29 [17 Am. Rep., 295]),
and of a landowner who let out his premises to be
used as a bawdy-house, and of one who constructs
upon his lot vaults, the necessary use of which cre-
ates a nuisance (*Rex* v. *Pedley,* 1 Ad. & El. (K. B.),
822; *Marshall* v. *Cohen,* 44 Ga., 489 [9 Am.
Rep., 170]), or if one who, by the negligence
of his contractor, leaves a dangerous excava-
tion near a highway (*Irvine* v. *Wood,* 51 N.
Y., 224 [10 Am. Rep., 603]), or in a side-
walk in a city (*Chicago* v. *Robbins,* 2 Black, 418
[17 L. Ed., 298]). In such cases the liability of the
landowner rests upon the ground that the very ex-
istence of the thing constitutes a nuisance, the re-
sponsibility for which can not be shifted by a mere
letting to or contracting with another.

But on principle it would seem to be otherwise
where the structure or work, whatever it may be, was
not of itself a nuisance, and where the letting was
general in its character. In such case, if the use of
such structure or work does not *ex necessitate* make
a nuisance, but after the letting it is used by the ten-
ant so as to create one, then the tenant alone should
be liable.

This limitation upon the general rule, which fixes
liability upon the landlord for a nuisance on his prem-
ises has been presented in many cases, but in none
with more force than in the leading case of *Rich* v.
*Basterfield,* 4 C. B., 783, which went far in overturn-
ing the authority of *The King* v. *Pedley,* 1 Ad. & El.

(K. B.), 822. This latter case held that if a landlord erect a building of which the occupation is likely to produce a nuisance, or if he let a building which requires particular care to prevent the occupation from becoming a nuisance, and the nuisance occurs for want of such care on the part of the tenant, then the landlord is responsible. But in *Rich* v. *Basterfield,* supra, the previous cases involving this question were reviewed, and the sound conclusion was announced that, if the landlord lets premises, not in themselves a nuisance, but which may or may not be used by the tenant so as to become a nuisance, and it is entirely at the option so to use them or not, and the landlord receives the same rent, whether they are so used or not, the landlord can not be made responsible for the act of his tenant.

In the present case, while the roundhouse was erected near the house of the defendant in error for the housing of engines, yet it was not in itself a nuisance. Whether it became one depended alone upon the will of the lessees. It was not incumbent upon them to use it for storing their engines. In addition, the record tends to show that, even if the lessees saw proper to appropriate this building to that purpose, they might have moved their engines in and out of it by employing wood and hard coal, which would have reduced the injury to defendant in error, if any, to an inappreciable extent.

What has been said may be here repeated: If the

roundhouse was a nuisance at the date of the lease, then the landlord, by his contract of leasing, could not have avoided liability.   But inasmuch as it was not then a nuisance, and only became one upon its use by the tenant, we think the liability of the landlord would depend upon the fact, to be passed on by the jury under proper instructions, whether the nuisance complained of arose necessarily from its ordinary use, or from its improper use by the tenants.   In the first instance he would be liable, and in the second the tenant alone would be chargeable. . 2 Wood on Nuisance (3d Ed.), sec. 827.  This author, in the same section of the valuable work just cited, says:  "The rule may be stated as the result of the authorities to be that, in order to charge the landlord, the nuisance must necessarily result from the ordinary use of the premises by the tenant, or for the purpose for which they were let; and where the ill results flow from the improper or negligent use of the premises by the tenant, or, in other words, where the use of the premises may or not become a nuisance according as the tenant exercises reasonable care or uses the premises negligently, the tenant alone is chargeable for damages arising therefrom."   To the same effect is Taylor on Landlord and Tenant, vol. 1, sec. 175.

The trial judge failed in the clause above given, as well as in other portions of his charge, already referred to, to make this essential distinction, the effect of which was to say to the jury that the plaintiff in er-

ror was responsible for the nuisance which the record tended to show its tenants committed, whether such nuisance resulted from a proper or improper use of the roundhouse by these tenants.

In another view it is apparent this instruction was hurtful to plaintiff in error. As has already been stated, the trial judge greatly narrowed the scope of the jury's investigation. He said to them: "The question for you to determine is one of fact, namely, was the operation of the roundhouse, as carried on, a nuisance? If not, the defendant is not liable, but if in its operation . . . the plaintiff has suffered hurt, annoyance, discomfort, inconvenience, and damage, . . . then the defendant is liable."

Abounding as the record did in evidence that the defendant in error had suffered hurt, annoyance, etc., from the occupation and use of the roundhouse, under this instruction the jury could not do otherwise than return a verdict for the defendant in error, and this in spite of the fact that under a proper direction, as indicated above, they might have found that such operation was not the necessary result of the construction of the roundhouse, and that plaintiff in error in no way gave its consent to this method of use or occupation.

There are some other assignments of error which will be briefly disposed of.

First. The trial judge was in error in withdrawing from the jury so much of the testimony of E. C. Lewis

as went to show that the plaintiff in error did not control or operate the roundhouse in question; and also in declining to let go to the jury the lease made by the terminal company to the Louisville & Nashville Railroad and to the Nashville, Chattanooga & St. Louis Railway; for, as has already been shown, if the nuisance created by the railroad companies was not the necessary result of the construction of the roundhouse, and it was committed by these companies, it was essential to the proper defense of the plaintiff in error that the jury should understand the exact relationship of the terminal company to those companies. *Rich* v. *Basterfield,* supra.

Second.   It was also error in the trial judge to permit the witness Mrs. Jacobs, over the objection of the plaintiff in error, to state that the engines, which it is alleged committed the nuisance complained of, by general reputation, belong to the terminal company. Such testimony is incompetent to prove title.   *Jones* v. *Jennings,* 10 Humph., 428; *Berniaud* v. *Beecher,* 76 Cal., 394 (18 Pac., 598.)

Third.   The trial judge improperly let to the jury certain testimony as to the effect of the alleged nuisance upon the value of the property or of the fee; but this testimony was practically excluded from the consideration of the jury by his charge, when he told them that in the assessment of damages, should they find for the plaintiff, they might look, among other things, to such as occurred to the use of her property as her

residence or home, etc., taking into consideration in such assessment the discomfort, annoyance, etc., which she may have suffered from smoke, etc. There was no error in this instruction. *Baltimore* & *P. R. R.* v. *Fifth Baptist Church,* 108 U. S., 317 (2 Sup. Ct., 719, 27 L. Ed., 739).

Fourth. It is assigned for error that the court below declined to give the following request: "That, if the proof shows that the defendant built the terminal roundhouse and yards for the purposes for which the proof shows they have since been operated, and that in the operation of them the defendant or its lessees employed the best and most skillful locomotive engineers, and had them instructed, by a person skilled in the operation of such engines, as to how to use them so as to produce as little smoke as possible, using such fuel as is ordinarily used for such purposes by the best railroads in the country, and that under the circumstances above set out, in operating said engines, damage resulted to the plaintiff from smoke or soot, etc., necessarily issuing from the engines, or noises necessarily resulting from the operation of its engines, then in that case, neither the defendant nor its lessees be liable in this action."

It will be observed in the excerpts from the charter made in an early part of this opinion that no location is fixed for the property to be acquired for terminal purposes. The State thus left not only the selection of the property to be so used to the will of the corpora-

tion, but the fixing of the site of the roundhouse within the limits of the property.

This being so, there is no warrant for the contention that a reasonable use of this roundhouse would protect the company, if otherwise liable, against a claim for compensation made by one whose property had been injured by such use. In such a case its charter would give it no right to enjoy its property at the expense of another, and to it would be applied, as to an individual, the maxim, "*Sic utere tuo alienum non laedas.*"

To a claim for exemption from liability rested on a charter right, the answer may be properly made that the State has not authorized the wrong complained of, and in locating its roundhouse so that the injury necessarily resulted to the adjacent landowner it did so at its peril.

Even in England, though the general rule is that, when Parliament has authorized the construction of such a work at a particular place where its use would constitute a nuisance at common law, no compensation could be claimed in respect to injury to private rights, apart from a negligent use, unless provided for in the act. To avoid liability it is held that statutory sanction sufficient to justify the creation of a nuisance must be express, or must arise by necessary implication. *Hill* v. *Managers of the Metropolitan Asylum Dist.,* L. R. 4 Queen's Bench Div., 433, was an action brought by adjacent property owners to re-

cover damages "in respect of and to obtain an injunction against the recurrence of what the plaintiffs alleged to be a nuisance affecting their rights by the erection and maintenance" of an asylum for the reception of smallpox patients.   One of the defenses of the managers to the action was that the erection and maintenance of the asylum was under the direction of the local government board, which derived its authority from an act of Parliament.   To this defense Pollock, B., said:   "There are no provisions in that act requiring them to build the very hospital, and on the very site, and to carry it on in the very manner in which it was carried on," and, this being so, "it can not be supposed that the legislature armed them with an option so to perform their duty as to create or not to create a nuisance affecting the rights of others."   This case went by appeal to the House of Lords, and is reported in L. R. 6 Appeal Cases, 193. There separate opinions were delivered by Lord Chancellor Selborne, Lord Blackburn, and Lord Watson, concurring, however, in sustaining the rule announced by Pollock, B.   In the course of the opinion of Lord Watson this strong language is used:   "Where the terms of the statute are not imperative, but permissive, when it is left to the discretion of the persons empowered to determine whether the general powers committed to them shall be put into execution or not, I think the fair inference is that the legislature intended that discretion to be exercised in strict

conformity with private rights, and did not intend to confer license to commit nuisance in any place which might be selected for the purpose." The case of *Truman* v. *London, B. & S. C. Ry. Co.,* L. R. (25 Ch. Div., 423), is of like import.

But, over and beyond this, we think this corporation, in selecting a place for its roundhouse, acted in a private capacity, and is responsible for the injurious consequences which may result from its use. This is the view taken in *Beseman* v. *Penn. R. R. Co.,* (N. J. Sup.), 13 Atl., 167. It is there said: "A railroad, in selecting a place for repair shops and engine house, acts altogether in its private capacity. Such location is a matter of indifference to the public. Consequently, with respect to such act, the corporation stood on the footing of an individual, and was entitled to no superior rights of immunity. . . . The authority to construct such works did not authorize it to place them wherever it might think proper in the city, without reference to the property rights of others. Grants of power to corporate bodies like these can have no license to use them in disregard of the rights of others, and with immunity for their invasion." To the like effect is the leading case of *B. & P. R. R.* v. *Fifth Baptist Church,* supra; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.,* 103 N. Y., 10 (8 N. E., 537, 57 Am. Rep., 701).

Other errors are assigned, but we think that they

Terminal Co. v. Jacobs.

may all be resolved into those which have been disposed of.

For those already indicated, the cause is reversed and remanded.