Harper COOPER and wife, Mildred C.
Cooper, Appellants-Appellees,

v.

CORDOVA SAND AND GRAVEL COMPA-
NY, INC. and Frank T. Tobey,
Jr., Appellants-Appellees,

and

Michael Alger and former wife, Nancy Alger,
et al., Appellees.

Court of Appeals of Tennessee,
Western Section.

Aug. 18, 1971.

Certiorari Denied by Supreme Court
March 20, 1972.

Newton P. Allen, T. F. Jackson, III, and Armstrong, Allen, Braden, Goodman, McBride & Prewitt, Memphis, for appellants-appellees Harper Cooper and wife, Mildred C. Cooper.

Carroll C. Johnson, William C. Bateman, Jr., and Chandler, Manire, Johnson & Harris, Memphis, for appellant-appellee, Cordova Sand and Gravel Co.

John D. Walt and Thomas R. Dyer, Memphis, for appellee, Leader Federal Savings and Loan Assn.

John R. Dunlap, Alexander W. Wellford, Jr. and Lawler, Humphreys & Dunlap, Memphis, for appellant-appellee, Frank T. Tobey, Jr.

Henry M. Beaty, Jr., Memphis, for Michael D. Alger and Nancy R. Alger, appellees.

CARNEY, Presiding Judge.

The original bill was filed by Harper Cooper and wife, Mildred C. Cooper, against Michael D. Alger and his former wife, Nancy R. Alger, and the defendant Leader Federal Savings and Loan Association seeking a rescission of a contract for the purchase of a home located at 2311 Ridgeland Drive in Shelby County, Tennessee. They also sought a recovery of their $4,000 down payment on the home and the exoneration of their liability on the first mortgage indebtedness held by defendant Leader Federal Savings and Loan Association. The gravamen of the complainants' bill was that after they purchased the home from Mr. and Mrs. Alger on August 25, 1967, the lot on which the home was built suffered a severe settlement which resulted in severe damage to the brick dwelling built thereon. The home was built by the defendant Bob Neal Homes, Inc. on lot 128, Section A, Lynfield Road Subdivision. Lynfield Road Subdivision was developed by the cross-defendant Cordova Sand and Gravel Company, Inc., and cross-defendant East Ridge Estates. John L. McRee is sole owner of Cordova Sand and Gravel. Frank Burt, Jr. and wife own all the stock of East Ridge Estates, Inc. Section A consisted of about 30 acres of land. Twenty acres of Section A were situated in an old gravel pit area.

Leader Federal filed answer and cross-bill against Cordova Sand and Gravel Company, East Ridge Estates, Inc., John L. McRee, Frank Burt, Jr., Betty Burt, and Frank Burt, Sr., as the developers of the lot alleging fraud and deceit on the part of several defendants. The cross-bill also made Bob Neal Homes, Inc. and Frank T. Tobey, Jr. parties defendant and alleged negligence on their part.

Frank T. Tobey, Jr. was the engineer who designed and approved the installation of the foundation for the home. He certified both to the Shelby County Planning Commission and to Leader Federal that on June 25, 1965, he had inspected the footings, excavations and approved the pouring of the footings and found them to be in a firm fill having adequate bearing capacity to support footing loads.

Other cross-bills were filed by the other parties to the cause seeking varying degrees of relief. We deem it unnecessary to outline in detail all of the various pleadings of the parties.

The case was tried below for approximately six weeks before the Chancellor without a jury. The record contains 18 volumes, 3,600 pages, and many exhibits. On request of counsel, we allowed almost an entire day for argument of this case and a companion case of Holley v. Cordova Sand and Gravel appealed from the Circuit Court of Shelby County.

Defendants and cross complainants, Mr. and Mrs. Alger (now divorced), completed the purchase of the home the third week in January, 1966, at a price of $27,500. They paid $3,600 in cash and the balance was financed by the defendant Leader Federal Savings and Loan Association secured by a first mortgage. In February, 1966, there was a sudden settling of the foundation in the southeast corner of the house. Cracks developed in the brickwork on the outside largely along the east wall; the floors of the front bedroom and the marble floor of the entry hall dropped down; ceilings cracked.

Upon complaint by the Algers the defendant Bob Neal Homes, Inc., along with the engineer, defendant Frank Tobey, Jr., repaired the damage. This was done by grouting or mudjacking which is a process of pumping or blowing cement and fly ash under the house to raise the foundations and floors. Full repairs also were made to the other portions of the house, both interior and exterior. To all appearances the foundation under the house was made secure.

In August, 1967, Mr. and Mrs. Alger had separated and sold the home to Mr. and Mrs. Cooper for a price of $27,368. The Coopers paid $4,000 cash and assumed $23,368 due to Leader Federal Savings and Loan Association. Complainant Cooper and wife were told by the real estate agent that previously there had been a settling of the foundation and floor but that the foundation had been repaired and that the house was in good condition. The Coopers asked no further questions.

In January, 1968, another slippage and settling of the lot occurred, more severe than the first. Estimates of cost of repair and establishment of solid foundation ran from $10,000 to $20,000. The Coopers made no effort to repair the house but filed suit for rescission of the contract.

The Chancellor exonerated the original purchasers, Mr. and Mrs. Alger, of any fraud or misrepresentation. He found that they acted in good faith in having their real estate agent advise Mr. and Mrs. Cooper of the prior damage and repair to the home. The Chancellor denied a rescission of the contract but sustained the cross-bill of Leader Federal Savings and Loan Association which had been adopted by Mr. and Mrs. Cooper and by Mr. and Mrs. Alger.

The Chancellor found the defendants Cordova Sand and Gravel Company, Inc. and East Ridge Estates, Inc. through their officials, John L. McRee and Frank Burt, Jr., as developers of the lot were guilty of overt misrepresentation and fraud in holding out to all potential purchasers that the real estate in question was suitable for the building of homes thereon when as a matter of fact the former gravel pit area had not been properly filled and compacted in a manner to make lot 128 suitable for the erection of homes thereon.

The Chancellor found that the defendant Frank Tobey, engineer, and the builder, Bob Neal Homes, Inc., were both negligent in failing to ascertain that the ground had not been compacted as a "controlled fill." A controlled fill is understood by engineers and builders to mean that an area has been filled and compacted according to specifications drawn by an engineer relating to type of soil, degree of compaction, depth of each layer of earth, together with the moisture content of each layer, with the filling supervised by someone trained in such filling and with the actual filling being checked in the field by laboratory technicians during the course of the filling. No engineer drew specifications for the filling and no laboratory tests were made during the filling.

The Chancellor decreed as follows: (1) that the complainants Cooper and wife have judgment against defendants Cordova Sand and Gravel Company and East Ridge Estates, Inc. and Bob Neal Homes, Inc. in the amount of $4,166.98 being the amount paid in cash by the Coopers; (2) the complainants Cooper and wife and the defendants Alger and former wife, Nancy Alger, were ordered indemnified by Cordova Sand and Gravel Company, East Ridge Estates, Inc., and Bob Neal Homes, Inc. for any sums which they might be required to pay on the indebtedness held by Leader Federal Savings and Loan Association; (3) Cordova Sand and Gravel Company, East Ridge Estates, Inc., Bob Neal Homes, Inc. and defendant Frank T. Tobey, the engineer, were held equally liable as indemnitors to Leader Federal Savings and Loan Association for any loss it might sustain by a deficiency on the original Alger note after foreclosure; (4) the defendant Frank T. Tobey was held to be entitled to be indemnified by the defendants Cordova Sand and Gravel Company and East Ridge Estates, Inc. for any amount which he might be obligated to pay to Leader Federal Savings and Loan Association under the decree of the Chancellor.

By permission of the Court below Leader Federal Savings and Loan Association foreclosed its deed of trust. At a sale held on November 12, 1970, Leader Federal Savings and Loan Association bought in the house and lot at the price of $12,000. The balance due on the original Alger note, after payment of attorneys' fees, costs, etc., was $14,205.74.

The Chancellor exonerated the officers of Cordova Sand and Gravel Company and East Ridge Estates, Inc. from personal liability. A pro confesso was entered against Bob Neal Homes, Inc. Neither Bob Neal Homes, Inc. nor East Ridge Estates, Inc. has appealed. Many of the parties have appealed. For clarity we discuss each appeal separately.

## APPEAL OF CORDOVA SAND AND GRAVEL COMPANY

Cordova has filed sixteen assignments of error.

Assignments of error Nos. II and III insist that the proof preponderates against the finding of His Honor the Chancellor that the direct cause of the damage to the Cooper house was the improper compaction of the lot on which it was built. We concur in the finding of the Chancellor that the cause of the damage to the house was the improper filling and compaction of the lot.

In 1964 Cordova Sand and Gravel Company and the East Ridge Estates, while acting under a joint venture agreement, undertook to develop for subdivision purposes the abandoned gravel pit. McRee was the president and sole stockholder of Cordova Sand and Gravel. Frank L. Burt, Jr. was president and principal stockholder of East Ridge Estates, Inc. McRee had been in the gravel business for many years and had had a great deal of experience in moving dirt with a bulldozer and in building roads and highways. Within the last ten years he had not developed a fill for residential, commercial or industrial con-

struction to a depth of more than ten feet. Cordova Sand and Gravel and East Ridge Estates procured the services of Mr. Harville, an engineer, to make topographical survey and do preliminary studies preparatory to the subdivision planning, filling and developing.

Mr. Harville prepared a plan of the subdivision showing "gravel pit area to be controlled fill" which was filed with the Shelby County Planning Commission. In several contracts, Cordova and East Ridge Estates stipulated that the subdivision was to have controlled fill to 95% compaction of density to be certified by accredited laboratory testing. Actually the fill was uncontrolled, the dirt was simply pushed from the high places to the low places in the subdivision. A haulway was made across the lot No. 128 whereby heavy machinery and dirt moving equipment constantly moved across this particular lot during the course of filling the area. No certification of the density, moisture, or amount of compaction was made by any engineer and no laboratory tests were made during the course of the entire fill. Mr. McRee well knew that in gravel pit operations after one pit is dug out, the overburden from another newly opened pit is thrown over into the old pit and repeated until the entire area is mined out. Some of the pits in the area in question were 40 feet deep. There were several holes with water in them when filling operations started. Mr. McRee made no attempt to put in "controlled fills" but simply bulldozed the high land into the low land and packed the ground on top by repeated trips with bulldozers and other earth-moving machinery.

We find the proof overwhelming that the house in question subsided and almost broke in two as the direct result of the improper and inadequate compaction of the fill over the gravel area and that Cordova Sand and Gravel Company and East Ridge Estates, through their respective presidents, McRee and Burt, Jr., deliberately misrepresented to Bob Neal Homes, Inc. and all other persons interested in building or buying homes in the area that the fill was a "controlled fill" and suitable for the erection of dwellings thereon. Assignments of error II and III are respectfully overruled.

■ Assignment of error No. I insists that His Honor the Chancellor erroneously held the vendor-developers obligated to indemnify the Coopers, the Algers and Leader Federal because: (1) the vendor-developers could not be liable to remote owners for defects in the property alleged to have been caused by negligence; (2) such vendor-developers were not guilty of negligence to remote owners and their mortgagee for acts or statements made prior to and upon the sale of the property to Bob Neal Homes; and (3) there was no reliance by remote owners on any acts or statements of the vendor-developers.

Appellants rely upon the rule of caveat emptor applied in the cases of Smith v. Tucker, 151 Tenn. 347, 270 S.W. 66, 41 A. L.R. 830 (1924), and Evens v. Young, 196 Tenn. 118, 264 S.W.2d 577 (1954).

Our Supreme Court has not overruled Smith v. Tucker. However, in Belote v. Memphis Development Co. (1961), 208 Tenn. 434, 346 S.W.2d 441, our Supreme Court has recognized an exception to the rule of Smith v. Tucker. Justice Burnett, later Chief Justice, referred with approval to Section 353, subdivision (b), of the Restatement of Torts. From his opinion we copy as follows:

" 'A vendor, therefore, is not required to exercise care to disclose dangerous conditions or to have an ordinarily retentive memory as to their existence, unless the condition is one which such an inspection by the vendee would not discover or, although the condition would be so discovered, the vendor realizes the risk involved therein and has reason to believe that his vendee will not realize it. On the other hand, if the vendor actively conceals the condition, by painting it over or otherwise, or deliberately states

that the land is in safe condition when he knows it to be dangerous or deliberately fails to disclose a condition which the vendor believes that the vendee neither knows nor will discover, although an inspection would disclose it, he is not entitled to assume that the vendee will discover it before throwing the land open to others.'

"When a vendor does these things clearly he should be liable."

It is interesting to note that upon a retrial of the Belote case this Court affirmed a judgment in favor of the defendant builder. 51 Tenn.App. 423, 369 S.W.2d 97.

See also the cases of Gasteiger v. Gillenwater (1966), 57 Tenn.App. 206, 417 S.W. 2d 568, and Gassaway v. Travelers Insurance C., 222 Tenn. 649, 439 S.W.2d 605.

On the authority of Belote v. Memphis Development Company, supra, we hold that the fraud of Cordova Sand and Gravel, Inc. and East Ridge Estates, Inc. in selling the lots for residential purposes under the false pretense that the gravel pit area had been filled and compacted to engineering standards in a manner to make the lots suitable for the erection of homes thereon constituted an exception to the rule of Smith v. Tucker and that the vendor-developers should be liable in damages for the results of their fraud even though the damages sustained by the complainants were damages to property instead of personal injuries as in Belote and Gasteiger. The rule of caveat emptor developed during the years when the sellers were rude, unlearned, hard-working farmers and artisans and the purchasers or buyers were regarded as more sophisticated and experienced; hence, the courts put the burden on the buyers to protect themselves in the market place.

Through the years the pendulum has swung full circle and now the rule of caveat emptor is fast becoming obsolete. The trend of decisions throughout the country is to protect the purchasers and consumers because the promoters and the vendors are now the sophisticated and most able to protect themselves in the market. See Cohen v. Vivian, 141 Colo. 443, 349 P.2d 366, and Sabella v. Wisler, 59 Cal.2d 21, 27 Cal. Rptr. 689, 377 P.2d 889, in which the rule of caveat emptor was rejected and the sellers of real estate were held liable to plaintiff homeowners who suffered damages to their homes from improper compaction of filled lots.

■ We find no merit in the contention of the vendor-developers that there was no privity between them and the ultimate purchasers of the lot, namely, the Algers and the Coopers. The trend of modern decisions is away from allowing a vendor to use lack of privity as a shield against liability for sale of defective products. See Dunn v. Ralston Purina (1934), 38 Tenn. App. 229, 272 S.W.2d 479. In the case at bar the plaintiffs Alger and wife, Cooper and wife, and Leader Federal Savings and Loan Association were all parties whom the vendor-developers could reasonably anticipate could be hurt financially by their concealment of the defective fill of the gravel pit area. They were subvendees from Bob Neal Homes, Inc. and we hold there was sufficient privity to be exonerated from loss resulting from the fraud practiced by the defendant vendor-developers. Defendants Cordova Sand and Gravel Company and East Ridge Estates, Inc. intended that Bob Neal Homes, Inc. would build houses on the lots sold by defendants and sell the houses and lots to homeowners like the Algers and Coopers and the defendants well knew that most of such homes would be financed by lending agencies such as Leader Federal Savings and Loan Association. Assignment of error No. III is overruled.

■ Assignments of error IV, V, VI, VII, and XII all raise substantially the same instance that the failure by Cordova and East Ridge Estates, Inc., to give proper compaction to the soil was not the direct

and proximate cause of the damage to the Cooper home but such damage was the result of intervening causes, namely, the failure of Bob Neal Homes and the engineer, Tobey, to prepare adequate footings. True, the Chancellor found the defendants, Bob Neal Homes, Inc. and Frank Tobey, negligent in failing to prepare adequate footings for the house sold to the complainants and failure to test the compaction of the soil. We concur with His Honor's holding that the failure to discover the hidden defect buried under several feet of tightly packed soil did not constitute such intervening cause as would release the vendor-developers, Cordova Sand and Gravel Company and East Ridge Estates, Inc., from primary liability for their deliberate and fraudulent misrepresentations. Defendants Cordova Sand and Gravel Company and East Ridge Estates should have anticipated likely damage in some form to purchasers of homes built in the gravel pit area. Friendship Telephone Co. v. Russom (1957), 43 Tenn.App. 441, 309 S.W.2d 416. These assignments of error are, therefore, respectfully overruled.

Assignments of error Nos. VIII, XIII, and XIV insist that the claims of Leader Federal, the Coopers, the Algers, and Tobey were barred by the statute of limitations.

■ The general rule in Tennessee is that fraudulent concealment of a cause of action tolls the running of the statute of limitations. Hall v. De Saussure, 41 Tenn.App. 572, 297 S.W.2d 81 (1956); Howell v. Davis (1957), 43 Tenn.App. 52, 306 S.W.2d 9; Redwood v. Raskind (1961), 49 Tenn.App. 69, 350 S.W.2d 414; and Ray v. Scheibert (1969), 224 Tenn. 99, 450 S.W.2d 578.

■ The case of Clayton v. Haury (1970), 224 Tenn. 222, 452 S.W.2d 865, relied upon by the appellant Cordova Sand and Gravel Company is not controlling of the case at bar because the complainants in Clayton v. Haury did not rely upon fraud and deceit in their suit. The Chancellor

correctly refused to apply the statute of limitations and the above assignments of error are respectfully overruled.

■ By assignment of error No. XV Cordova insists that the Court erred in failing and refusing to make additional findings of fact requested by Cordova after the Chancellor filed a memorandum on January 7, 1970. The authority for requesting additional findings of fact is to be found in T.C.A. Section 27–113. This section expressly provides that it shall not apply to cases tried in the Chancery Court upon oral testimony. Under T.C.A. Section 21–1002 all trials in Chancery Court are on oral testimony unless the Chancellor grants authority for the case to be heard otherwise. A number of the requested findings of fact were determined in the Chancellor's memorandum opinion. Assuming, but not deciding, that the appellants have a right to assign error to the failure of the Chancellor to find additional findings of fact, we hold that the additional findings of facts sought from the Chancellor which were not covered in his memorandum opinion are not determinative of Cordova's right to prevail on this appeal. Therefore, any error made by the Chancellor in refusing to make such findings of fact would at most be harmless error. T.C.A. Section 27–117. Assignment of error No. XV is overruled.

The appeal of Cordova Sand and Gravel Company is dismissed.

## APPEAL OF FRANK T. TOBEY, JR.

■ Mr. Tobey, the engineer, was ordered by the Chancellor to indemnify Leader Federal Savings and Loan Association against any loss on its loan financing the Alger home because of his negligence. The Chancellor in turn awarded Mr. Tobey indemnity from Cordova and East Ridge Estates for any amounts which Tobey might have to pay Leader Federal Savings and Loan Association. We have already dismissed the appeal of Cordova and in effect held the award of indemnity by the

Chancellor in favor of Tobey against Cordova valid.

Mr. Tobey has appealed that portion of the Chancellor's decree requiring him to indemnify Leader Federal Savings and Loan Association. Also Mr. Tobey has appealed from that portion of the Chancellor's decree which held McRee and Frank Burt, Jr., officials of Cordova Sand and Gravel and East Ridge Estates not liable as individuals to indemnify Tobey.

Assignments of error I through VI all raise the principal question that the evidence preponderated against the finding of the Chancellor that the defendant Tobey was guilty of negligence in the inspections of the footings and in failing to ascertain the type and depth of the fill and in finding that the defendant Tobey did not act in a reasonable prudent manner in which engineers in this locale would have acted under similar circumstances.

Mr. Robert Edward Neal, former president of Bob Neal Homes, Inc., testified by deposition. At the time of the trial his corporation was defunct and he was working as a real estate salesman. For many years he was engaged in home building and had built 75 to 100 homes prior to building the home bought by Alger and wife. Mr. Burt for East Ridge Estates and Mr. McRee for Cordova Sand and Gravel Company persuaded Mr. Neal to buy six lots in Section A of the Lynfield Subdivision. Mr. Neal knew that a portion of the subdivision had been an old gravel pit area. Both Mr. Burt and Mr. McRee assured him that the property was suitable for the building of residential homes. Neal agreed to pay $4,250 per lot for the six lots with an agreement in writing that if the footings on any house cost more than $200, Cordova and East Ridge would pay such overage.

When Bob Neal Homes, Inc. started the Alger home, one James Edwards was given the contract to dig and pour the concrete footings. Neal had used Edwards and his brother on several other houses with satisfaction. The Shelby County Planning Commission employed a county inspector full time to inspect footings of new houses. Where the county inspector could see that the footings for the foundation were on solid ground, the inspector did not require the services of an engineer but whenever it appeared that the footings were being poured in filled ground, the inspector regularly required the services of an engineer. In this case the county inspector did require an engineer because lot 128 was filled.

Mr. Tobey, who had done a great number of inspections for Bob Neal Homes, Inc., was called by the contractor Edwards. Mr. Tobey made a total of 917 inspections of dwellings in 1965 and did not remember the specific tests which he made in July, 1965, at lot No. 128. He based a considerable portion of his testimony upon information received from the footings subcontractor Edwards. Tobey thought that he was told by Edwards that the ground was controlled filled and he remembered that the ground was extremely hard.

Edwards testified that he dug postholes at the instruction of Mr. Tobey under the floor slab up to 8 to 10 feet deep and that the ground was extremely hard; that there were no soft spots in the fill or excavations and that Tobey told Edwards he wanted to see a topographical survey of the area; and that later he, Edwards, observed Tobey examining a piece of paper in company with other persons; that the paper seemed to be about 13 inches wide and 2 feet long.

Tobey received $25 to $30 for his inspection paid by Bob Neal Homes, Inc. On October 11, 1965, he wrote the following letter to the Shelby County Building Department:

"On June 25, 1965, I inspected footing excavations and approved pouring of footings. Footings were found to be in firm fill having adequate bearing capacity to support footing loads. Footings

were lowered to a minimum of 16″ below grade and reinforced with 2 lines of ⅝ inch round bars.

Floor slab post holes (inspected July 2, 1965) extended down into firm ground having adequate bearing capacity to support post hole loads.

Yours truly,

/s/ Frank T. Tobey, Jr.
Frank T. Tobey, Jr."

Tobey furnished Leader Federal Savings and Loan Association, directly or through Neal, an exact copy of his letter of October 11, 1965, to the Shelby County Building Department. The policy of Leader Federal was to require certificate from an engineer for footings and slab whenever there was evidence that the soil under a house and lot had been disturbed before Leader Federal would finance the house. Leader Federal had learned that at least a portion of the Lynfield Road Subdivision was filled and, therefore, asked Neal for a certification from an engineer. On December 29, 1965, Leader Federal received from Neal an exact copy of Tobey's letter to the Shelby County Building Department. On the basis of this letter Leader Federal financed the home. Laboratory tests made after suit was filed indicate that the soil under the Alger house was filled to depths varying from 13 to 28 feet.

Tobey testified that if he had known it was not a controlled fill, he would not have approved the footings and foundations without requiring piers to extend down through the fill to natural soil.

We concur in the finding of the Chancellor that Mr. Tobey was negligent in accepting the assurances from contractor Neal and/or subcontractor Edwards that the footings were being placed in a controlled fill without making any independent investigation to confirm the fact. He made no inquiry as to what laboratory made the testings of the soil as it was being compacted. He made no effort to get any reports from the laboratory or anyone concerning the density of the soil and did not determine nor attempt to determine by test borings or otherwise the degree and uniformity of compaction. He was guilty of negligent misrepresentation in certifying to the Planning Board and to Leader Federal that the foundations were sufficient to support the dwelling. Therefore, assignments of error I through VI are respectfully overruled.

■ Assignments of error VII, VIII, IX, and X together raise the broad question that Tobey is not liable to Leader Federal because there was no privity between them. These assignments must be overruled on the testimony of Mr. Tobey himself that he furnished to Neal for Leader Federal a copy of his letter to the Building Department rather than make a new certification directly to the lending agency; and he said that it was his custom to do so and that he well knew that the copy of the letter would be an inducement to the lending agency to make the loan on the new dwelling. See Tartera v. Palumbo (1970), 224 Tenn. 262, 453 S.W.2d 780, and Dickle v. Abstract Company, 89 Tenn. 431, 14 S.W. 896.

Assignments of error VII, VIII, IX, and X are respectfully overruled.

■ We find no merit in assignment of error No. XI that Leader Federal was barred from any right of recovery against Tobey because of laches. After the house first collapsed while the Algers owned it, defendant Tobey made some independent investigation and satisfied himself that the house was built on an uncontrolled fill but did not reveal this information to anyone else. Instead, he advised and collaborated in the grouting or mudjacking of the floor and foundation of the house. The Algers and Leader Federal were led to believe that the trouble had been repaired. Tobey did not give any indication that other settlement could be expected. Therefore, under no theory can we hold Leader Federal

guilty of any laches which reacted to the detriment of Mr. Tobey. Therefore, assignment of error No. XI is overruled.

Assignment of error No. XII that the Trial Court erred in failing to hold McRee and Burt liable as individuals to indemnify Tobey is sustained for the reasons discussed under the appeal of Mr. and Mrs. Cooper.

All of the other assignments of error of Mr. Tobey are respectfully overruled.

## APPEAL OF HARPER COOPER AND WIFE, MILDRED C. COOPER

 Assignment of error No. I insists that His Honor the Chancellor erred in dismissing the complainant Cooper's original bill for rescission against Michael Alger and Nancy R. Alger. We concur in the finding of the Chancellor that the sellers, Michael D. Alger and his former wife, Nancy R. Alger, acted in good faith in selling the property to Cooper and wife; that they did not make any misrepresentations of the condition of the house; that neither they nor their sales agent withheld any information from the purchasers, Cooper and wife; that they did not act to deceive them in any manner. Therefore, assignment of error No. I is respectfully overruled.

 Assignment of error No. II is to the effect that His Honor the Chancellor was in error in dismissing the Cooper's cross-bill against the defendant engineer, Frank T. Tobey, Jr. We hold that His Honor the Chancellor was correct in dismissing the Cooper cross-bill against engineer Tobey because there was no proof that the Coopers relied upon the certification made by Tobey to the Shelby County Planning Board and to Leader Federal Savings and Loan Association. There is nothing to indicate that Mr. Tobey ever intended or expected or anticipated that his certification as to the footings would be used as an inducement by the seller, Bob Neal Homes, or any subsequent owner of

the property to induce purchasers to purchase the home. For these reasons we hold that the case does not come within Section 552 of the Restatement of the Law of Torts nor within the rule of Tartera v. Palumbo (1970), 224 Tenn. 262, 453 S.W.2d 780, re- 'ied upon by appellants. Assignment of error No. II is, therefore, respectfully overruled.

 Assignment of error No. III insists that His Honor the Chancellor was in error in dismissing the Cooper cross-bill against the defendants McRee and Frank Burt, Jr. as individuals. This assignment of error is well-taken. The defendant McRee was both president and sole stockholder of Cordova Sand and Gravel Company. He had the option to purchase the gravel pit in question in his name individually. The defendant Frank Burt, Jr. was president of East Ridge Estates and he and his wife were the sole stockholders of said corporation. McRee and Burt collaborated in falsely representing to Bob Neal Homes, to Frank Tobey, and to the purchasers Cooper and wife, that the fill on lot 128 was a controlled fill. On the authority of our Tennessee cases of Oak Ridge Auto Repair Service v. City Finance (1967), 57 Tenn.App. 707, 425 S.W.2d 620; Fidelity Trust Company v. Service Laundry Company (1929), 160 Tenn. 57, 22 S.W.2d 6; Neese v. Fireman's Fund Insurance Company (1964), 53 Tenn.App. 710, 386 S.W.2d 918; and Nunnelly v. Southern Iron Company, 94 Tenn. 397, 29 S.W. 361, we hold that the defendant McRee and the defendant Frank Burt, Jr. are personally liable along with their respective corporations to the Coopers and Tobey whom they injured by their fraudulent conduct. We think the following quotation from 19 Am.Jur.2d 778 correctly states the law applicable to the case at bar:

"A director or officer of a corporation does not incur personal liability for its torts merely by reason of his official character; he is not liable for torts committed by or for the corporation un-

less he has participated in the wrong. Accordingly, directors not parties to a wrongful act on the part of other directors are not liable therefor. If, however, a director or officer commits or participates in the commission of a tort, whether or not it is also by or for the corporation, he is liable to third persons injured thereby, and it does not matter what liability attaches to the corporation for the tort. A contrary rule would enable a director or officer of a corporation to perpetrate flagrant injuries and escape liability behind the shield of his representative character, even though the corporation might be insolvent or irresponsible.

"If, because of the tort committed by an officer or agent of a corporation, the corporation becomes liable also, such individual and the corporation are jointly liable and may be joined as defendants."

Fraud in any form is viewed with great horror and indignation by Courts of Equity. Gibson's Suits in Chancery, Fourth Edition, Section 48, page 66.

Again from 19 Am.Jur.2d, Corporations, Section 1384, pages 780 and 781, we copy as follows:

". . . Directors are personally liable for fraudulent representations whereby a person is induced, to his injury, to contract with the corporation, the liability being based upon the tort, not upon the contract. . . ."

A decree will be entered in this Court modifying the decree of the lower Court in conformance with this opinion and the cause will be remanded to the Chancery Court for the enforcement of said decree. The costs in the Court below and in this Court are taxed against Cordova Sand and Gravel Company, East Ridge Estates, John L. McRee and Frank Burt, Jr.

NEARN, J., tried the case below and PARROTT, J., of the Eastern Section of the Court of Appeals sat in his place on this case.

MATHERNE and PARROTT, JJ., concur.