803 F.2d 719
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff-Appellee
v.
MES-MAX INVESTMENTS, INC., Defendant
JAE M. MAXFIELD, Defendant-Appellant.
 No. 85-5802.
 United States Court of Appeals, Sixth Circuit.
 Sept. 10, 1986.
 
 BEFORE: KRUPANSKY, NELSON, and RYAN.
 PER CURIAM.
 
 
 1
 Defendant-appellant Jae M. Maxfield (Maxfield) appealed from a final order of the district court entering judgment in favor of plaintiff-appellee the Federal Deposit Insurance Corporation (FDIC) in this action initiated pursuant to 12 U.S.C. Sec. 1819.
 
 
 2
 During the time period relevant to this dispute, Maxfield and Bill Messer (Messer) owned equal shares of stock in Mes-Max Investments, Inc. (Mes-Max or "the corporation"), a corporation organized under the laws of the State of Tennessee. Mes-Max owned and operated Norris Dam Marina, a boat dock/Marina on Norris Lake, approximately thirty miles north of Knoxville, Tennessee. Messer was the President of Mes-Max and supervised the corporation's daily operations in Tennessee. Maxfield maintained his residence in Monroe, Michigan and served as the corporation's Secretary and Treasurer.
 
 
 3
 On May 28, 1982, Messer and Maxfield, as corporate officers acting on behalf of Mes-Max, executed a promissory note in the amount of $225,000.00 payable to the City & County Bank of Knox County ("the bank"). At the same time, Mes-Max executed a security agreement which granted the bank a security interest in all of its furniture, fixtures, equipment, inventory, accounts receivable and contract rights.
 
 
 4
 In late 1982 or early 1983, Messer was approached by an individual from Texas who was interested in purchasing four houseboats from Mes-Max. Because Mes-Max's use of the houseboats for daily and weekly rental was not generating sufficient revenue and the houseboats were in varying states of disrepair, Messer concluded that a sale of the four houseboats would benefit the corporation. Messer telephoned Maxfield to inform him of the opportunity to sell the houseboats, whereupon Maxfield informed Messer that the houseboats were subject to the bank's security interest. Maxfield instructed Messer to contact Bill Newman (Newman), an officer of the bank, to obtain a release to dispose of the houseboats. Messer testified that he contacted Newman who authorized the sale of the houseboats and that Newman also informed Messer that the appropriate releases would be prepared and executed by the bank at a later date. Newman testified that he had no recollection of Messer's request to release the collateral. However, it was undisputed that no written authorization or release was executed by the bank.
 
 
 5
 The houseboats were eventually sold and the proceeds from the sale used by Mes-Max to purchase items of inventory and to pay other general business expenses.
 
 
 6
 On May 30, 1983, the bank was closed by the Tennessee Commissioner of Banking. Thereafter, the FDIC was appointed receiver of certain bank assets, including the Mes-Max note. On August 6, 1984, the FDIC filed this action against Mes-Max seeking satisfaction of the outstanding balance due on the promissory note. On August 25, 1984, the FDIC amended its complaint to name Messer and Maxfield as defendants in their individual capacities. The trial court determined that both Messer and Maxfield were individually liable for conversion resulting from the sale of four houseboats to a third party in January of 1983 and entered judgment in favor of the FDIC in the amount of $31,000.
 
 
 7
 Thereafter, Maxfield filed a motion to alter or amend the judgment of the district court or, in the alternative, for a new trial, asserting that the record did not support a finding that he participated in the corporate act of conversion so as to be subjected to personal liability. The district court overruled the motion and this timely appeal followed.
 
 
 8
 On appeal, Maxfield conceded that Mes-Max's sale of four houseboats in January of 1983 without written authority from the bank constituted an act of conversion for which the corporation was liable. However, Maxfield argued that the FDIC failed to present sufficient evidence to support the district court's conclusion that he was individually liable for the corporate tort.
 
 
 9
 Under Tennessee law, a secured party seeking to impose personal liability upon a director or officer of a corporation for a corporate tort bears the burden of demonstrating that the officer or director participated in the wrongful act which resulted in a tort. Cooper v. Cordova Sand and Gravel Co., 485 S.W.2d 261, 271-272 (Tenn. Ct. App.1971). See also, Brungard v. Caprice Records, Inc., 608 S.W.2d 585, 590-91 (Tenn. Ct. App. 1980) Upon consideration of the record herein, this court concludes that the district court erred in determining that Maxfield participated in the corporate act of conversion. The record does not support a finding that Maxfield knew of the unauthorized disposition of the collateral at or near the time of the sale. Moreover, his instructions to Messer to obtain a release from the bank before proceeding reflected his desire and intention to proceed with the sale of the houseboats only upon compliance with law.
 
 
 10
 For the reasons stated above, the judgment of the district court is hereby REVERSED and this matter is remanded to the district court for entry of judgment in favor of Maxfield.