EDITH WILLIAMS

*v.*

ELMER F. SMITH, Mark Shoe Corporation, d/b/a Craig's
Red Cross Shoes.

435 S.W.2d 808.

(*Knoxville,* September Term, 1968.)

Opinion filed December 31, 1968.

JOHN H. WERNER, Chattanooga, for appellants; VAN
CLEAVE, HATFIELD & WERNER, Chattanooga, of counsel.

J. Thomas Mann, Chattanooga, for appellees; Bishop, Thomas, Leitner, Mann & Milburn, Chattanooga, of counsel.

Mr. Justice Humphreys delivered the opinion of the Court.

Edith Williams sued Elmer F. Smith, an individual, and Mark Shoe Corporation, d/b/a Craig's Red Cross Shoes, in a common law action for personal injury damages. The defendants filed a plea in abatement alleging plaintiff's exclusive remedy lay under the Workmen's Compensation Act of Tennessee. The plea in abatement was sustained, and plaintiff Williams has appealed.

In her declaration plaintiff alleged that she had worked for six years as a saleslady for the defendant company at its retail shoe store in Chattanooga. On the morning of September 29, 1967, she was fired by defendant Elmer F. Smith, a fellow employee who was store manager. She was at work on the premises of the company at the time. After she was fired, the store manager went to his office where she was allegedly assaulted by the store manager.

Her suit was to recover for personal injuries allegedly received during the assault.

Defendant's plea in abatement asserted that plaintiff's injuries were incurred by accident arising out of and in the course of employment and that her remedy was exclusively under the Workmen's Compensation Law, and that her common law cause of action should be abated.

The plea in abatement was sustained by the trial judge and, after plaintiff's petition to rehear was overruled, appeal was perfected to this Court.

Two basic questions are presented by the appeal: Whether or not the Workmen's Compensation Act bars a common law action where an employer corporation acting through its employee alter ego intentionally commits an assault and battery upon an employee, so as to restrict the assaulted employee's remedy exclusively to the Workmen's Compensation Act. The second question, is whether or not the Workmen's Compensation Act provides immunity to an employee who commits an intentional and malicious assault and battery upon a co-employee.

There are no Tennessee cases on all fours with this one. We have cases dealing with an employee's right of recovery under the Workmen's Compensation Act which establish the rule that, generally, where an employee is injured by a fellow servant, there is no liability under the Workmen's Compensation Act, *Milne v. Sanders,* 143 Tenn. 602, 228 S.W.2d 702, unless the assault is causally related to the work. That an assault is causally related to the work and arises out of employment if, after the event, there is apparent to the rational mind a causal

connection between the work and the resulting injury. *Whaley v. Patent Button Company,* 184 Tenn. 700, 202 S.W.2d 649. In the *Whaley* case, where an employee was shot by a former employee after the latter had been discharged for incompetency or insubordination, it was held the assault was an accident arising out of employment, and compensable.

We have authority for the proposition that an employee who is injured by a third person at a time when he is acting in the course of his employment suffers an "accident arising out of employment", which is compensable. *Chamber of Commerce v. Turner,* 158 Tenn. 323, 13 S.W.2d 318.

All of these cases treat the injuring incident as an "accident" on the theory the incident was unexpected or unusual, or unintended from the standpoint of the employee. But none of our cases have dealt with the specific questions we have here.

Larson deals with this problem, and his conclusions are summarized as follow:

"Sec. 68.00. Intentional injury inflicted by the employer in person on his employee may be made the subject of a common-law action for damages on the theory that, in such an action, the employer will not be heard to say that his intentional act was an 'accidental' injury and so under the exclusive provisions of the compensation act. But when the intentional injury is committed by a supervisory employee, although there are cases permitting similar common-law suit against the employer on the ground that the supervisory employee is the alter ego of the employer, the better rule holds such a suit barred against the employer."

Larson states that the theory sustaining a common-law action against an employer for an intentional injury is that the employer will not be heard to allege that the injury was "accidental" and hence under the exclusive provisions of the Workmen's Compensation Act, when he himself intentionally committed the act. It is also suggested that a second theory supporting the act is that the employer severs the employment relation by his act of violence. See *Boek v. Wong Hing*, 180 Minn. 470, 231 N.W. 233, 72 A.L.R. 108 (1930); *Le Pochat v. Pendleton*, 187 Misc. 296, 63 N.Y.S.2d 313 (1946); *Rumbolo v. Erb*, 19 N.J.Misc. 311, 20 A.2d 54 (1941); *Blake v. Head*, 106 L.T.Rep. (N.S.) 822; *Readinger v. Gottschall*, 201 Pa. Super. 134, 191 A.2d 694 (1963).

Concerning the particular problem presented by this appeal, Larson says:

"Sec. 68.21. Employer's personal act versus assault by agent.

When the person who intentionally injures the employee is not the employer in person but a foreman, supervisor or manager, both the legal and the moral reasons for permitting a common-law suit against the employer collapse.

The legal reason for permitting the common-law suit for direct assault by the employer, as we have seen, is that the same person cannot commit an intentional assault and then allege it was accidental. This does not apply when the assailant and the defendant are two entirely different people. Unless the employer has commanded or expressly authorized the assault, it cannot be said to be intentional from his standpoint any more than from the standpoint of any third person.

Realistically, it to him is just one more industrial mishap in the factory, of the sort he has a right to consider exclusively covered by the compensation system.

\* \* \* \* \* \*

It is a commonplace rule of respondeat superior that a master may, in certain circumstances, be held vicariously liable for the violent and intentional acts of his employee, even if the violence is a direct violation of the employer's orders. To impose a penalty on the employer in this situation, which may amount to many thousands of dollars, when he has done all he can do personally to provide compensation protection and to treat his employees well, is an outrage far worse than the fancied one which is supposed to be prevented by allowing the action.

The cases allowing the action proceed upon the fiction that the supervisory employee is the 'alter ego' of the employer. As has been remarked at several other points, there is no place for fictions in compensation law; this is especially true when your particular rule is built up largely on the basis of personal moral culpability in an individual, and the effect of the fiction is to assume that the shifting of technical legal liability under the arbitrary principle of respondeat superior connotes also the shifting of the moral and ethical responsibility for the wrong—a completely erroneous conclusion."

In reaching this conclusion *Stewart v. McLellan's Stores,* 194 S.C. 50, 9 S.E.2d 35 (1940), and *Heskett v. Fisher Laundry & Cleaners Co., Inc.,* 217 Ark. 350, 230 S.W.2d 28 (1950), both of which are relied on here by plaintiff Edith Williams, as well as *Lavin v. Goldberg*

*Building Material Corp.*, 274 App.Div. 690, 87 N.Y.S.2d 90 (1949), are criticized on the ground they have tacitly assumed the authorities supporting common law actions for direct employer assaults, like *Boek v. Wong Hing,* supra, or *Blake v. Head,* supra, are adequate precedent to sustain the action where the assault is by a company manager.

The discussion of this question by Larson is concluded with this statement:

"Perhaps the strongest argument against allowing suit against the employer for a supervisory employee's intentional assault is a practical one; acceptance of this rule would mean that in all assault cases by one co-employee on another, of which there are hundreds, you would have only to show that the assailant was one notch higher on the totem-pole than the victim, and the compensation act would go out the window. So, in a large factory, with layer upon layer of foremen, supervisors, managers, executives and officers, the exclusiveness of compensation would no longer depend on whether the assault was merely another work-connected quarrel, but would turn on the relative rank of participants—a consideration which has no bearing on work-connection at all." Vol. 2, sec. 68.23.

■ Upon analysis, we are of opinion Larson's reasoning is better than that of the three cases he criticizes (*Lavin v. Goldberg Building Material Corp.,* which followed *DeCoigne v. Ludlum Steel Co.,* 251 App.Div. 662, 297 N.Y.S. 636, *McLellan's Stores* and *Heskett*), and hold the Tennessee Workmen's Compensation Act bars this suit against Mark Shoe Corp. d/b/a Craig's Red Cross Shoes, but not against defendant Smith.

The discussion in Larson which we have cited, concluding the employer is saved from suit by the Workmen's Compensation, closes with this statement:

*"In any event, it should be remembered that the victim can always sue the person himself who was guilty of the assault, and that therefore the corporateness of the employer does not leave the plaintiff altogether without a common-law defendant."* Vol. 2 sec. 68.22.

Larson refers to three cases in which the assaulted employee had sued both the employer and the supervisory employee at common law in which the action against the employer had been dismissed and that against the actual assailant sustained. *Echols v. Chattooga Mercantile Co.,* 74 Ga.App. 18, 38 S.E.2d 675 (1946); *Gardner v. Stout,* 342 Mo. 1206, 119 S.W.2d 790 (1938), *Mazarredo v. Levine,* 274 App.Div. 122, 80 N.Y.S. 237 (1948). We think these cases reach the right conclusion, and that our case of *Majors v. Moneymaker,* 196 Tenn. 698, 270 S.W.2d 328 (1954) is not to the contrary.

Actually, what we have to decide is whether or not the fiction, that the employee-victim of an intentional, deliberate assault has sustained an accident because it was unexpected and unintended on his part, can be availed of by an assaulting co-employee to compel his victim to proceed under the Act. And we think the assaulter cannot so compel the victim, because the fiction was created and is allowed to operate solely because this is the fair, right and just thing to do. It is a conclusion based entirely on the effect on the assaulted employee. So that it would be a travesty on justice, indeed, to make this fiction operate in favor of one whose act has been wilful and malicious and intentionally harmful and is in no conceivable sense an "accident".

■ We hold that while the fiction of accident is available to the assaulted employee to sustain a recovery under the Workmen's Compensation Act, this being just and right, this fiction created for the benefit of the injured employee is not available to the intentional assaulter to require that the injured employee proceed under the Workmen's Compensation Act, so to do being unfair and unjust.

This is not contrary to *Majors v. Moneymaker*, supra, as that case involved an injury which was accidental in fact and not in fiction, growing out of a negligent act of a co-employee. From any point of view, either that of the injured employee or the negligent co-employee, the entire incident was an accident and so clearly came under the Workmen's Compensation; which as we have pointed out is not true of the present case where the assault was not an accident on the part of defendant Elmer F. Smith.

Since writing the above, we have found the following discussion in Larson, which relates somewhat to what we have said:

"It is interesting to observe that this holding has the rather remarkable effect of giving the employee in these circumstances an option to claim compensation or sue at common law, although such options are usually not supposed to exist. The option comes about in this way: it is well established that deliberate assault upon an innocent employee by some third person or co-employee is an 'accidental injury'. It will be recalled from the discussion of assaults that the early difficulty presented by the argument that such an injury was the result of intention as distinguished from accident was overcome by the simple expedient of viewing the affair

from the point of view of the victim rather than of the assailant, since from the victim's point of view the assault was an unexpected and untoward mishap.

"However, if the incident gets into court not as a compensation claim but as a damage suit by the employee against an employer-assailant, it is the employer who must affirmatively plead the exclusiveness of the Act as a defense. To do this he must allege that the injury was an accident—and how can he do this, when he himself has deliberately produced it? Thus, from the point of view of the person who, as a matter of pleading, must allege the accidental character of the injury, the occurrence was not accidental but intentional.

"There is nothing inconsistent in this result, curious as it may seem on the surface, since it is quite proper to analyze the incident in each type of action from the standpoint of the person having the burden of establishing his case or defense." Vol. 2, sec. 68.12

This statement, which is sound, is a further reason for distinguishing the present case from *Majors v. Moneymaker*, supra.

The action of the trial court in sustaining the plea in abatement in favor of Mark Shoe Corp., d/b/a Craig's Red Cross Shoes is affirmed. The action of the trial judge sustaining the plea in abatement of Elmer E. Smith, is set aside and the case is remanded for trial as to this defendant. The costs are taxed equally against plaintiff-in-error Edith Williams and defendant-in-error Elmer F. Smith.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur,