**Joyce BREWER, et al.**

v.

**MONSANTO CORPORATION, et al.**

No. 1–85–0071.

United States District Court,
M.D. Tennessee,
Columbia Division.

Aug. 15, 1986.

---

Lee England, William E. Boston, Boston Bates & Holt, P.C., Lawrenceburg, Tenn., Gerald J. Williams, Slap Williams & Cuker, Albert J. Slap, Mark R. Cuker, Ronald F. Brien, Jr., Philadelphia, Pa., for plaintiffs.

Richard Lodge, Bass, Berry & Sims, Frank C. Gorrell, Delta Anne Davis, Nashville, Tenn., for Monsanto Corp.

John L. Chambers, Chambers Wyckoff & Beckner, Nashville, Tenn., Frank C. Jones, James D. Miller, Charles H. Tisdale, Jr., M. Robert Thornton, J. Kevin Buster, Richard A. Schneider, James N. Gorsline, King & Spaulding, Atlanta, Ga., for Dart & Kraft (a/k/a Duracell).

M. Clark Spoden, Dearborn & Ewing, Nashville, Tenn., for Mallory Capacitor Co., and Emhart Corp.

Leonard Rivkin, Stanley Pierce, Joseph Ortega, Rivkin Radler Dunne & Bayh, Garden City, N.Y., for Emhart Corp.

## MEMORANDUM

WISEMAN, Chief Judge.

This case is now before the Court on motions to dismiss filed by two of the three defendants. The plaintiffs' central contention is that defendant Monsanto manufactured and defendants Duracell and Emhart used polychlorinated biphenyls (PCBs) and associated toxic chemicals[1] in a way that caused injury to the plaintiffs. Defendant Monsanto, manufacturer of the PCBs has not filed a motion to dismiss. As used hereinafter, defendants shall refer only to defendant Duracell and defendant Emhart, unless otherwise noted. The two defendants were the successive owners of an electronic component plant in Waynesboro, Tennessee. The plaintiffs fall into three groups: the employees of both defendants, the employees of the second owner defendant, and the family members of the other two groups.

Defendants both argue that plaintiffs' complaint should be dismissed for defective pleading and that worker's compensation exclusivity bars the plaintiffs' claims. Defendant Duracell also argues that as a vendor of realty it cannot be held liable for what it left on the land. Plaintiffs argue that their complaint is adequate and that their claims are not barred by worker's compensation exclusivity. Plaintiffs also argue that defendant Duracell is liable for the injuries caused by the contamination Duracell left on the site, since the contamination created a nuisance.

This Court has jurisdiction solely on the basis of diversity jurisdiction. Therefore, this Court is obligated to apply the substantive law of the state of Tennessee. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In areas in which Tennessee state law is unsettled or unclear, this Court must undertake to predict what the Tennessee courts would do with the question of substantive law before this Court. *See Bernhardt v. Polygraphic Co. of America*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956). The questions of procedure that have been raised by the defendants are governed by federal law. *See Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965). Since this case comes to us now on a motion to dismiss, federal, procedural law requires that the Court take all of the allegations of plaintiffs' complaint as true and resolve all inferences from the complaint in plaintiffs' favor. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

### I. *Facts*

Defendant Duracell International, Inc., owned a manufacturing plant in Waynesboro, Tennessee, until July 30, 1979.[2] On July 30, 1979, defendant Duracell sold the plant to Emhart Industries, Inc. The Waynesboro plant was used to manufac-

---

1. Plaintiffs allege that they were exposed to PCBs, benzene, chlorodibenzofurans and dioxins. As used hereinafter PCB will refer to all these toxins.

2. Duracell was known as P.R. Mallory & Co., Inc. until February 28, 1980, when it adopted its present corporate name. This defendant will be referred to as Duracell for times both before and after 1980.

ture electronic capacitors. According to plaintiffs, the manufacturing involved the extensive use of PCBs. Plaintiffs allege that PCBs were purchased for use at the plant by both defendants. The defendants are alleged to have been negligent, in their use of the toxic chemicals, causing dangerous contamination. Defendants are also alleged to have fraudulently concealed from the plaintiffs the true nature of the contamination and the danger that it posed due to the desire for economic advantage in wages and safety expenditures.

## II. *Defective Pleading*

The defendants have moved to dismiss plaintiffs' complaint for defective pleading. The defendants allege that the complaint is confusing because it fails to separate adequately the claims raised and because the allegations of fraud are not pled with sufficient particularity. Fed.R.Civ.P. 10(b) and 9(b). Plaintiffs in response have amended their complaint as well as filing a brief. Although most of the issues of this diversity case are governed by Tennessee law, the procedural questions raised here are to be determined under federal law. *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

### A. *Rule 10(b), Separation of Claims*

The portion of Rule 10(b) relied upon by defendants provides "[e]ach claim founded upon a separate transaction or occurrence and each defense other than denial shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matter set forth." Fed.R. Civ.P. 10(b). The policy of this rule, as of most of the Federal Rules of Civil Procedure, is to facilitate clarity and succinctness in pleading. The defendants argue that it is not clear from plaintiffs' complaint exactly which plaintiffs are claiming what relief.

Plaintiffs' complaint is framed as a class action complaint. The plaintiffs fall into three groups: (1) named plaintiffs who were employed by both defendants; (2) sub-class plaintiffs who were employed only by defendant Emhart; and (3) a third

group. The third group consists of relatives of the named plaintiffs and sub-class plaintiffs. Plaintiffs have not given the third group a separate label, which does lead to some confusion. In this opinion, the Court will refer to the third group as family member plaintiffs.

Plaintiffs set out, in paragraph 29 of their complaint, ten injuries allegedly suffered by all plaintiffs, and in paragraph 30 the injuries allegedly suffered by some of the family member plaintiffs. In the ad damnum of count I plaintiffs state a general prayer for relief. The allegations of injury and prayer for relief are incorporated by reference in the twelve counts of plaintiffs' complaint. Defendants allege that this form of pleading can be construed to allege a loss of consortium claim based on a worker's compensation claim, which would be clearly meritless under Tennessee law. *See Nichols v. Benco Plastics, Inc.*, 225 Tenn. 334, 469 S.W.2d 135 (1971). Defendants also claim that the complaint can be construed to raise a lost wages claim for non-employees, which would also be meritless.

Adoption by reference, although permitted by Rule 10(c), Fed.R.Civ.P., can lead to internal inconsistency in a pleading. This inconsistency is not fatal. Fed.R.Civ.P. 8(e)(2). Moreover, the Court is not convinced from reading plaintiffs' complaint that given a fair reading the complaint is so confusing as to prejudice defendants. Most of the ambiguity that defendants seek to read into plaintiffs' complaint stems from plaintiffs' failure to label the three groups into which plaintiffs fall.

■ Failure to label the groups may be poor pleading by the plaintiffs, but it does not warrant the harsh remedy of dismissal. Defendants would be entitled to dismissal of the complaint only if they first had moved for a more definite statement under Rule 12(e), pointing "out the defects complained of and the details desired." Fed.R. Civ.P. 12(e). If plaintiffs had not complied with an order granting the motion, then the Court might strike the offending portions or dismiss the action under Rule 41(b). *See*

5 Wright & Miller, Federal Practice and Procedure (Civil) Section 1324 (1969); 27 Federal Procedure (Lawyer's Edition) Section 62:104 (1984).

### B. *Rule 9(b), Pleading of Fraud*

Defendants also argue that plaintiffs' allegations of fraud are insufficiently pled. Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Plaintiffs allege that during the period from 1969 to 1978 defendants knew the plant was contaminated but fraudulently misrepresented six material facts and failed to disclose, despite a duty to disclose, five material facts. Plaintiffs allege that the defendants acted individually and in concert to conceal from plaintiffs these facts. Plaintiffs allege that had they known these facts they would have either quit or demanded higher wages, indicating reliance injury. Defendants argue that these allegations are insufficient because plaintiffs do not allege which individual agent or employee made which statements and on what date the statement was made.

Defendants support their claim of insufficiency by citing two Sixth Circuit cases as well as a number of district court cases. Two two Sixth Circuit cases provide sufficient guidance for this Court to discern the proper course. *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389 (6th Cir. 1975), involved a motion to dismiss that was converted to a summary judgment motion. In *Dayco*, the plaintiffs had had an opportunity to conduct substantial discovery and the evidence overwhelmingly indicated that plaintiff could not make out the elements of fraudulent concealment. Although the Sixth Circuit did discuss Rule 9(b) in *Dayco*, the court was predominantly concerned with a Rule 56 summary judgment motion. The context of *Dayco* is so far afield from the circumstances of this case as to have no bearing.

*Bender v. Southland*, 749 F.2d 1205 (6th Cir.1984), is procedurally more apropos. In *Bender*, plaintiff claimed a violation of the Sherman Antitrust Act and of the Racketeer Influenced and Corrupt Organizations Act (RICO). The RICO claim, which the district court had dismissed, was based on mail fraud. The court exposited in detail the elements required to ultimately prove a RICO-mail fraud claim, before turning to what the plaintiff must initially allege. *Id.* at 1216. The proof required to prevail on a mail fraud charge, as described in *Bender*, appears to be substantially more stringent than that required to prove simple common-law fraud. For instance, the Sixth Circuit held that both a "scheme or artifice to defraud and a mailing for the purpose of executing that scheme are required." *Id.* at 1215–16. The court then held that, since the plaintiff had made no allegation of intent or of the statements made or of the time or place of the statements, the plaintiff had at best stated a breach of contract claim. The court therefore affirmed the district court's dismissal of the RICO mail fraud claim. *Id.* at 1216. Different kinds of fraud—fraudulent concealment, mail fraud, fraudulent conveyance, common law fraud, to name a few—all have different elements and place different emphasis on their common elements. Therefore, the circumstances that must initially be pled to satisfy Rule 9(b) will also differ.

There is a substantial tension within the Federal Rules of Civil Procedure between Rule 8(e), Rule 1, and Rule 9(b). If plaintiff's here were to plead the dates and the specific speaker for misrepresentations made over a nine year period, the complaint assuredly would not be concise. *Cf.* Fed.R. Civ.P. 8(e). Requiring the plaintiff to plead every circumstance of the fraudulent misrepresentations over a nine year period would not lead to the "just ... determination of every action." Fed.R.Civ.P. 1.

In attempting to resolve this tension, the Court will examine the underlying policies informing Rule 9(b). Three policies are most frequently cited. First, Rule 9(b) serves to protect the reputation of defend-

ants.[3] Second, Rule 9(b) prevents strike suits, suits filed for their nuisance value rather than from belief in their merits. Third, the rule insures notice to the defendant.

The protection of reputations is of course important. However, as a theory for imposing stricter pleading in fraud cases, it proves too much. To be sued for fraud is surely no worse than to be sued for the tort of outrage, or for gross negligence and recklessness. Nonetheless, the federal rules do not heighten the pleading burden for those actions. Nor are the standards of pleading under Rule 9(b) clear enough to insure that reputations are protected from frivolous claims. Even a vague allegation of fraud is usually dealt with by dismissal with leave to amend. *See, e.g., Ross v. A.H. Robins Co.*, 607 F.2d 545 (2d Cir.1979) *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *National Egg Co. v. Bank Leumi le-Israel, B.M.*, 504 F.Supp. 305 (N.D.Ga.1980). In other cases, a motion for more definite statement (Rule 12(e)) instead of a motion to dismiss (Rule 12(b)(6)) is required. *See, e.g., Beascoechea v. Sverdrup & Parcel & Associates, Inc.*, 486 F.Supp. 169 (E.D.Pa.1980). Because Rule 9(b) does not fully protect all reputations and, from the limited number of claims it covers, obviously was not intended to do so, this policy basis gives scant support to an overly technical construction of Rule 9.

Rule 9(b) is also said to prevent strike suits. This is facially specious. Rule 9(b), at most, allows early termination of strike suits by motions to dismiss. Furthermore, whether the rule achieves early termination is questionable. *Ross v. A.H. Robins Co.*, 607 F.2d 545 (2d Cir.1979), *cert. denied* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980) is illustrative. *Ross* was a shareholder's derivative action raising a claim of fraud. The original complaint was filed on March 23, 1977, and several motions to dismiss were filed under Rule 9(b). The

district court did dismiss the suit and plaintiffs appealed. 465 F.Supp. 904 (S.D.N.Y. 1979). The Second Circuit reversed the dismissal, holding that plaintiffs were entitled to replead their claim by filing a fourth complaint. 607 F.2d at 559. From this decision the defendants petitioned the Supreme Court for a writ of certiorari. The Court denied certiorari on May 12, 1980. 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). A petition for rehearing was denied on July 2, 1980. 448 U.S. 911, 100 S.Ct. 3057, 65 L.Ed.2d 1140. Finally, on June 30, 1981, the district court ruled that the complaint has been made sufficiently particular and ordered the defendants to answer. Fed.Sec.L.Rep. (CCH) ¶ 98205 (S.D.N.Y. 1981). Four years and four months were consumed by disputation over Rule 9(b). Surely no rule that generates so much nuisance value itself can be an effective deterrent to nuisance value suits.

Moreover, Fed.R.Civ.P. 11 provides a more pointed deterrent to frivolous claims. Rule 11 explicitly requires the attorney filing suit to certify that "to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact." Fed.R.Civ.P. 11. Rule 11 is the rule that prevents filing of strike suits.

█ The third justification for Rule 9(b) is that it is required to provide adequate notice to the defendant. This important policy is already contained in Rule 8. The inclusion of it again through Rule 9(b) not only demonstrates the importance attached to the policy, but also sheds light on the course that this Court should take. The allegations needed to give notice are simply more detailed for fraud than for other torts. Similarly, the allegations required to give notice of some kinds of fraud are more detailed than for other kinds of fraud. The Court finds that the proper course in a Rule 9(b) challenge is first to determine the kind of fraud charged and then to determine if, from the

---

**3.** This function of Rule 9(b) has recently come under attack as contravening the spirit, if not the letter of the Rules Enabling Act, 28 U.S.C. § 2072 (1982) by addressing substantive rights.

Sovern, *Reconsidering Federal Civil Rule 9(b): Do We Need Particularized Pleading Requirements in Fraud Cases?* 104 F.R.D. 143, 165–71 (1985).

complaint, the defendant has adequate information to frame a responsive answer. In so holding the Court follows the analysis implicitly undertaken by the Sixth Circuit in *Bender v. Southland*, 749 F.2d 1205 (6th Cir.1984). The kind of fraud and the ultimate proof required determine the initial pleading burden. The plaintiff is not required to plead facts proving each element; the plaintiff is required to plead the particular circumstances which, in the plaintiff's cause of action, will give the defendant adequate notice.

▆ Plaintiffs in this case allege fraudulent misrepresentation. The elements of the cause of action are governed by state law in this diversity case. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Tennessee law of fraudulent misrepresentation, the plaintiffs must ultimately prove that defendants made misrepresentations of past or present material fact knowing them to be false or recklessly disregarding the truth or falsity thereof and that plaintiffs relied on the misrepresentations to their detriment. *Graham v. First American National Bank*, 594 S.W.2d 723 (Tenn.App. 1979) *cert. denied Id.* (Tenn.1980).[4] The plaintiffs have identified the facts which they claim were misrepresented; they have not identified the specific statements, only the content. From the whole of the complaint, it is clear that the misrepresentations must have been made over a continuous period of many years, involving numerous parties. The plaintiffs have alleged both actual and implied knowledge and have claimed detrimental reliance.

The Court's determination must turn on whether notice of the content of the alleged misrepresentation is sufficient notice of the misrepresentation in a Tennessee fraudulent misrepresentation case. The Court holds that it is sufficient notice. Defendants know what toxic substances were involved, what characteristics of those sub-

stances plaintiff says were misrepresented, and which manufacturing plant was involved. At this point defendants can answer, addressing in an informed way plaintiffs claim of fraud. The crucial policy of Rule 9(b) is met, and in a way harmonious with the intent of Rule 8 and Rule 1.

### III. *Family-Member Plaintiffs*

Defendants cite numerous cases for the proposition that consortium claims and derivative actions are within the ambit of worker's compensation exclusivity. *See, e.g., Nichols v. Benco Plastics, Inc.*, 225 Tenn. 334, 469 S.W.2d 135 (1971); *Napier v. Martin*, 194 Tenn. 105, 250 S.W.2d 35 (1952); *Estate of Schultz v. Munford, Inc.*, 650 S.W.2d 37 (Tenn.App.1982). The Court has read these cases and is of the opinion that Tennessee Code Annotated section 50-6-108 does bar consortium claims and any other derivative claim. The rationale for this bar is the familiar quid pro quo analysis of worker's compensation exclusivity: The statute provides recovery for dependents of employees who die as a result of compensable injuries, and, therefore, those dependents cannot obtain a further recovery from the employer. However, the statute does not contain any provision for the employer to compensate a dependent unless the dependent's injury is contingent upon a relationship to an employee.

The statute is clear:

The rights and remedies herein granted to an employee subject to the Workers' Compensation Law on account of personal injury or death by accident ... shall exclude all other rights and remedies of such employee, his personal representative, dependents, or next of kin, at common law or otherwise, on account of such injury or death.

Tenn.Code Ann. § 50-6-108 (1983). The "rights and remedies" barred are those that arise because the *employee* has suffered "personal injury or death" under cir-

---

**4.** In Tennessee, the denial of certiorari may have precedential significance. In *Pairamore v. Pairamore*, 547 S.W.2d 545 (Tenn.1977), the Tennessee Supreme Court indicated that the de-

nial does have precedental value. "When we deny the writ ... [we] have made a final disposition of the case by approving the final decree of the court of appeals." *Id.* at 548.

**1274**

cumstances covered by the worker's compensation statute.[5]

■ Plaintiffs have defined, though not denominated, a sub-class consisting of family member plaintiffs. These family member plaintiffs claim that they were themselves exposed to PCBs and were injured by those PCBs. This direct injury is not within the scope of worker's compensation under Tennessee law; therefore, a common-law suit based on the direct injury is not within the worker's compensation exclusivity. The family member plaintiffs do not allege any claim arising from personal injury to employees. The family member plaintiffs allege their own personal injury from exposure to PCBs.

Defendant Emhart urges that family member plaintiffs' "states claims which are solely dependent on and derivative of the alleged deleterious exposure to PCBs in the workplace." The incident creating the exposure may have arisen out of and in the course of the employee's employment just as it arose out of the business of the employer, but the incident is not the injury. Family member plaintiffs have sued for their own injuries. Since family member plaintiffs are not and never were employees, the predicate injuries could not be injuries arising out of and in the course of their employment.

The only claims of relatives that are barred by Tenn.Code Ann. § 50–6–108 are those that are based on the relationship to an injured employee. Actions based on injuries independent of that relationship, even though mediated by an employee, have never been barred in Tennessee. Compensation to nonemployees for direct injury is not limited by worker's compensation schedules, nor assured by worker's compensation waiver of defenses. The relationship of a nonemployee to an employee does not affect the employer's liability for direct injury to the nonemployee.

### IV. The Intentional Tort Exception

Defendants argue that plaintiffs' fraud claim should be dismissed as barred by worker's compensation exclusivity under *Cooper v. Queen*, 586 S.W.2d 830 (Tenn. App.1979) and under the merger doctrine. 2A Larson Worker's Compensation Law § 68–3A (1983). Even if not wholly barred, defendants argue that the remedy of lost wages is unavailable because of the exclusivity bar. Plaintiffs argue that intentional injury is outside of the worker's compensation bar and that since they raise no claim for personal injury, merger is inappropriate. Plaintiffs also argue that since the claim for lost wages stems from a non-barred cause of action, the remedy is not barred. The plaintiffs and defendants agree that the Tennessee courts have never addressed fraud claims in the context of worker's compensation exclusivity.

Since this is an issue of first impression in Tennessee, the Court has no state precedent on which to rely. Instead, the Court must be guided by the trends and philosophies enlightening the jurisprudence of Tennessee, so that the decision here reached will not differ from that which the Court believes the Tennessee state courts would reach. *See Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Bagwell v. Canal Insurance Co.*, 663 F.2d 710 (6th Cir.1981).

Much of defendants' argument centers on the allegation of mental state required to remove a cause of action from the worker's compensation bar. Based on the decision in *Cooper v. Queen*, the Court believes that this focus on pleading is misplaced. In *Cooper*, the administrator of decedent employee's estate sued the employer at common law, alleging gross or criminal negligence. The *Cooper* court held that gross or criminal negligence does not rise to the level of an intentional tort so as to avoid the worker's compensation bar. *Id.* at 833. In reaching this conclusion, the

---

5. Obviously, it is not necessary that the employee have received worker's compensation. Many injuries at law are barred without being compensated under worker's compensation: disfigurement, *Clayton v. Pizza Hut, Inc.*, 673 S.W.2d 144 (Tenn.1984), sterility, *see* 2A Larson, Workers Compensation § 65.00 (1983), pain *see id.* The injury done by an accident which "arose out of and in the course of" employment is not compensable unless it is disabling.

court articulated a framework for future decisions. First, "an intentional tort by the employer in person upon the employee will afford a ground for common law action for damages." *Id.* Second, an intentional tort by a coemployee will give rise to a common-law action against the coemployee though not against the employer. *Id.* at 832; *see also Williams v. Smith,* 222 Tenn. 284, 435 S.W.2d 808 (1968). Third, a tort for which intent is not an element will not give rise to a common-law action unless it is done with actual intent to injure. *Cooper* 586 S.W.2d at 833.

Fraud is an intentional tort in Tennessee. *Wynne v. Allen,* 66 Tenn. 312 (7 Baxt.) (1874). Therefore, the decisive inquiry in determining whether plaintiffs may maintain a common law action for fraud is not under the third prong of *Cooper's* framework, but rather is under the first and second prongs. More importantly, it is between the first and second prongs. The defendants both are corporations; therefore, they cannot act "in person" on the employee. *See Cooper,* 586 S.W.2d at 833. However, the plaintiffs allege that the corporations pursued a long standing, premeditated course of fraud. It would be nonsensical to interpret the *Cooper* framework as making each participant in the fraud liable for an intentional tort, while excusing the corporate entity at whose direction and for whose benefit the fraud was perpetrated.

■ The Tennessee Supreme Court in *Williams v. Smith,* 435 S.W.2d 808 (1968) addressed the question of intentional injury by a coemployee and the liability of both the employer and the coemployee. *Williams* involved an assault and battery by a store manager on a sales lady. The Court, adopting Professor Larson's reasoning, held that an employer never loses the shield of worker's compensation exclusivity by virtue of a respondeat superior principle. *Id.* at 810, citing 2A Larson, Workmen's Compensation § 68.21). An employer does lose the shield when he can no longer allege all of the elements of his affirmative defense of worker's compensation exclusivity. Accident is an element of the affirmative defense. 435 S.W.2d at 811. According to Professor Larson and the Tennessee Supreme Court in *Williams,* an intentional tort by one employee on another employee remains accidental vis-a-vis the employer, who did not direct or participate in the intentional tort. 435 S.W.2d at 810; 2A Larson, Workmen's Compensation § 68.21. Professor Larson later states, dealing with a situation not before the *Williams'* court, that when "the character of the tort is such that some kind of employer direction or intention can be shown, the legal and moral arguments for permitting a damage suit once more come into play …" 2A Larson, Workmen's Compensation § 68.23. In light of Tennessee's adoption of Professor Larson's rationale for intentional coemployee torts and in light of the absurd result that would stem from any other interpretation of the *Cooper* framework, this Court predicts that the Tennessee courts would hold a corporate employer liable for intentional torts carried out at the behest of the corporate employer but through corporate employees. Taking, as required, all allegations in the complaint as true, the fraud alleged by plaintiffs involves a corporate policy effectuated through the corporate employees. *See Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Defendants cannot raise the affirmative defense of worker's compensation.

■ Defendants next argue that the fraud action must be merged with personal injury, so as to bring the fraud under the worker's compensation bar. Plaintiffs have responded that, since plaintiffs in the two fraud counts have not claimed items of personal injury damage, merger is inappropriate. If fraud were not an intentional tort, defendants' argument would have merit. However, because the Court holds that an employer's intentional torts are outside the worker's compensation bar, none of the injuries flowing from the intentional tort can be forced back into the statute's scope. Defendants also argue that the remedy of lost wages is precluded by the worker's compensation bar. The remedial

avenues for redress of a tort cannot be pretermitted by a statutory scheme that does not apply to the underlying tort. Since plaintiffs' claim for unjust enrichment is predicated on the same tort of fraud, it similarly is not barred by worker's compensation. Whether plaintiffs can actually prove that defendants were unjustly enriched by the fraud alleged is, of course, another question, and one not before the Court at this early point in the litigation.

Defendants' motion to dismiss plaintiffs' fraud claim as barred by worker's compensation exclusivity is denied.

## V. *Property Damage*

■ Plaintiffs allege that they have suffered property damage through the negligence of both defendants in allowing PCB contamination. Defendants argue that worker's compensation exclusivity bars the claims of employees for property damage. The relevant inquiry is whether the injury to property is within the scope of the worker's compensation scheme. The Tennessee Supreme Court has addressed this inquiry in a somewhat analogous context: whether non-compensable aggravation of a hernia would allow the employee to raise a common-law claim against the employer even though the worker's compensation statute did cover certain kinds of hernias. *Matthews v. Hardaway Contracting Co.,* 179 Tenn. 98, 163 S.W.2d 59 (1942). Answering in the affirmative, the Court held, "[t]here are many injuries that are noncompensable and which cannot be made compensable.... In all such cases ... the injured employee may have a common law right of action for the injuries sustained." *Id.* In *Hammett v. Vogue,* 179 Tenn. 284, 165 S.W.2d 577, 580 (1942), the same court held that "[w]here an employee suffers an injury that is not covered by the act, he may have his action at law for damages."

Nothing whatsoever in the worker's compensation statute provides for compensation for property damage. The worker's compensation statute addresses injuries to the person that arise out of and during the course of the employment. The statute compensates for lost wages and medical bills. Property damage is not personal injury, and the statute makes no provision for compensation for property damage. Since property damage is outside the scope of worker's compensation coverage, the quid pro quo that sustains exclusivity is absent.

Although the question has not arisen often, cases from other jurisdictions do address property damage claims and worker's compensation exclusivity.[6] In other jurisdictions a common-law claim for property damage has been allowed. In *Haddad v. Justice,* the Court of Appeals of Michigan held that property damage was not within worker's compensation exclusivity. 64 Mich.App. 74, 235 N.W.2d 159 (1975), *cert. denied, id.* (Mich.1976). The plaintiffs in *Haddad* were an employee and his wife. They were injured in an automobile accident under circumstances which triggered Michigan worker's compensation coverage. The Michigan court affirmed the dismissal of plaintiff wife's consortium claim, because of worker's compensation exclusivity. However, turning to the property damage claim, the court held: "[w]e find that there is no provision in the Workmen's Compensation Act applicable to plaintiffs' claim for property damage, and, as to it, [dismissal on exclusivity grounds] was improper." *Id.* at 76, 235 N.W.2d at 160.

A more celebrated case arose in Oklahoma, *Silkwood v. Kerr-McGee Corp.,* 667 F.2d 908 (10th Cir.1981), *rev'd on other grounds,* 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984) (preemption of punitive damages). The Tenth Circuit interpreted Oklahoma's worker's compensation exclusivity provision, which provides that worker's compensation liability for accidental personal injury arising out of and in the course of employment "shall be exclusive

---

6. No case from Tennessee courts directly on point has been cited by any party, and the Court's independent research, including computer assisted legal research, has revealed none from Tennessee. Mindful of *Erie,* the Court proceeds as it believes the Tennessee courts would. 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

and in place of all other liability of the employer and any of his employees, at common law or otherwise." Okla.Stat.Ann.Tit. 85 § 12 (West 1971 & Supp.1980) (as quoted in 667 F.2d at 916). The court held that since Oklahoma worker's compensation covers only accidental personal injury, property damage claims were not barred by worker's compensation exclusivity.

Defendant Duracell has responded to plaintiffs' citation of *Silkwood* by pointing out that the Oklahoma statute is "significantly different from the Tennessee statute involved here." Reply Brief of Defendant Duracell, Inc. in Support of its Renewed Motion to Dismiss at 6. The wording of the statute is significantly different. However, the principle both statutes embody is identical:

> The compensation remedy is exclusive of all other remedies by the employee or his dependents against the employer and insurance carrier for the same injury, if the injury falls within the coverage formula of the act. If it does not, as is in the case where occupational diseases are deemed omitted because not within the concept of accidental injury, the compensation act does not disturb any existing remedy. However, if the injury itself comes within the coverage formula, an action for damages is barred even though the particular element of damages is not compensated for, as in the case of disfigurement in some states, impotency, or pain and suffering.

2A Larson § 65.00 (1983). This Court finds that the principle expressed in Professor Larson's black letter exposition, and the rationale of the Michigan Court of Appeals and the Tenth Circuit persuasive. The analogous authority from the Tennessee Supreme Court convinces this Court that if plaintiffs had sued in state court the Tennessee courts would hold, as this Court does, that plaintiffs' claim for property damage is not barred by worker's compensation exclusivity.

## VI. *Contamination of the Land*

In Count IV of the complaint, plaintiffs allege that defendant Duracell negligently contaminated the site of Waynesboro plant with PCBs; in Count V plaintiffs allege that this created a nuisance. Plaintiffs allege that defendant Duracell sold the site in this nuisance condition. The contamination, according to plaintiffs, caused them personal injury and other harm. Defendant Duracell, in its motion to dismiss these counts, argues that in Tennessee the vendor of real property cannot be held liable for injuries occurring after the transfer of the realty, even though the injuries result from the condition of the realty at the time of the transfer.

Plaintiffs make three responses to defendants' invocation of the caveat emptor rule. First, plaintiffs argue that caveat emptor does not apply to the alienation of nuisance. Second, plaintiffs argue that the general trend and the trend in Tennessee is against the caveat emptor rule. Finally, plaintiffs argue that as a joint tort feasor with defendant Emhart, engaged in concerted tortious activity, defendant Duracell's sale of the plant site is irrelevant to defendants' liability.

In 1903 the Tennessee Supreme Court stated the general rule governing alienation of nuisances: "There is no doubt that, should a landowner erect or create a nuisance upon his land, he cannot rid himself of liability arising therefrom by the grant of the property to another." *Louisville & Nashville Terminal Co. v. Jacobs*, 109 Tenn. 727, 72 S.W. 954 (1903). *Jacobs* involved the 999 year lease of a round house by the defendant to the Louisville & Nashville Railway Company. The round house was held not be a nuisance at the time of transfer; therefore, the court held the defendant was not liable. Mindful of the almost three-quarter's of a century intervening since the Tennessee court's last statement, and of the dictum status of the Tennessee court's last statement, the Court has investigated whether the Tennessee courts would adhere to this rule today.

No reported Tennessee case indicates disagreement with this rule. A number of cases discuss defective premises, but

not those so defective as to constitute a nuisance. *See* page 1278, *infra.* Other jurisdictions continue to apply the alienation of nuisances rule; it is cited favorably in treatises; and statutes incorporate its policy. In *Pharm v. Lituchy,* the New York Court of Appeals held that a prior owner was liable to a tenant of the new owner. 283 N.Y. 130, 27 N.E.2d 811 (1940). The tenant was injured by a nuisance that had existed when the prior owner sold the premises. In *Pharm,* the accident occurred within days of the transfer and therefore the court did not consider how long the liability would continue. However, the same court in 1975 required vendors to remedy a nuisance even though "these defendants had conveyed all of their interests in the property in question to the present homeowners or their predecessors in title several years ago." *State v. Ole Olson, Ltd.,* 35 N.Y.2d 979, 365 N.Y.S.2d 528, 529, 324 N.E.2d 886 (1975).

In *State v. Exxon Corp.,* the New Jersey Superior Court applied the same doctrine, stating, "[i]t is the general rule that the creator of a nuisance remains liable even after alienating his property. 151 N.J.Super. 464, 483, 376 A.2d 1339, 1349 (Ch. Div.1977). This view is also stated as the general rule in *Toxic Torts: Litigation of Hazardous Substance Cases,* "A prior owner who has created a nuisance does not escape liability simply by selling the property." Pollan, *Theories of Liability in Toxic Torts: Litigation of Hazardous Substances Cases* 326 (G. Nothstein, ed. 1984). Under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 (1982), past owners may be held liable if they were partially responsible for hazardous substance contamination. In light of these authorities and the policy concerns they reflect, this Court is of the opinion that the Tennessee courts would not now abandon the rule first announced in the *Jacobs* case. 109 Tenn. 727, 72 S.W. 954. Defendant Duracell's motion to dismiss Count V is therefore denied.

In a separate count plaintiffs have alleged that, if the alleged contamination did not create a nuisance, it did create a defect in the property. Tennessee has long held that a vendor of real property is not liable for injuries occurring after the transfer of possession, even though arising from the pre-transfer non-nuisance defect in the property. *Smith v. Tucker,* 151 Tenn. 347, 270 S.W. 66 (1925). Like many states, Tennessee has also recognized exceptions to the caveat emptor rule. *See, e.g., Belote v. Memphis Development Corp.,* 208 Tenn. 434, 346 S.W.2d 441 (1961).

In *Belote,* the Tennessee Supreme Court adopted Restatement of Torts § 353(b). The provision adopted was carried forward unchanged in the Restatement (Second) of Torts. *Compare Belote,* 346 S.W.2d at 442 (quoting Restatement of Torts § 353(b)) *with* Restatement (Second) of Torts § 353(1). Under section 353(1),

(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if

(a) the vendee does not know or have reason to know of the condition or the risk involved, and

(b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.

The Tennessee courts have applied this exception several times, always in the context of new, residential construction. *See Belote v. Memphis Development Co,* 346 S.W.2d 441 (1961); *Cooper v. Cordova Sand & Gravel Co.,* 485 S.W.2d 261 (Tenn. App.1971), *cert. denied id.* (Tenn.1972); *Gasteiger v. Gillenwater,* 57 Tenn.App. 206, 417 S.W.2d 568 (1966), *cert. denied id.* (Tenn.1962).

Plaintiffs have alleged that both defendants knew at all relevant times that the site was contaminated. Second Amended Class Action Complaint ¶ 90. Therefore, the exception to the caveat emptor rule stated in section 353 does not apply to subclass plaintiffs' claims.

The plaintiffs place heavy reliance on *Cooper v. Cordova Sand & Gravel Co.,* 485 S.W.2d 261 (Tenn.App.1971), *cert. denied id.* (Tenn.1972). *Cooper* roundly criticized the caveat emptor rule as "fast becoming obsolete." *Id.* at 267.[7] However, *Cooper* involved a new home sale as did the cases which the *Cooper* court cited to support its contention that the rule is "fast becoming obsolete." *Id. See, e.g., Cohen v. Vivian,* 141 Colo. 443, 349 P.2d 366 (1960). This Court is required to decide this case under Tennessee law, and where, as here, the Tennessee rule is unclear, the Court must predict the probable result in a Tennessee court. The Tennessee courts have never extended vendor's liability for nonnuisance defects beyond the residential context. This Court is unable to predict in any principled way what further extensions the Tennessee court might at a later date undertake. Therefore, this Court holds that defendant Duracell cannot be liable for injuries occurring after defendant Duracell transferred possession and arising from the condition of the premises before defendant Duracell transferred possession, unless that condition constituted a nuisance.

Plaintiffs argue that even if defendant Duracell is not liable for nonnuisance defects, defendant Duracell would be liable under Restatement Second of Torts § 876 (1965), Persons Acting in Concert. The Tennessee courts have applied section 876 to common unlawful ventures. *See Huckeby v. Spangler,* 521 S.W.2d 568 (Tenn. 1975). In *Cecil v. Hardin,* however, the Tennessee Supreme Court outlined the elements required to establish joint liability:

The elements ... area common purpose, some manner of agreement among [the several parties], and an equal right on the part of each to control both the venture as a whole and any relevant instrumentality.

575 S.W.2d 268, 271 (Tenn.1978). Clearly, once defendant Duracell parted with possession, it lost all ability to control the site, a relevant instrumentality. Therefore, under Tennessee law and the Tennessee cases interpreting section 876, defendant Duracell cannot be liable for the actions of defendant Emhart. The only liability of defendant Duracell for injuries occurring after the sale and caused by the alleged contamination of the site, must stem from a determination that the contamination was a nuisance.

### VII. *Conclusion*

Counts I, II, and III are not affected by this memorandum, not having been put into issue by defendant Monsanto. Count IV in which sub-class plaintiffs allege that defendant Duracell negligently contaminated the land of the Waynesboro plant, but that the contamination did not constitute a nuisance is dismissed in accordance with section VI *supra.* As to Count V in which the contamination is alleged to have been a nuisance, defendants' motions are denied. Count VI in which the named plaintiffs allege property damage and the family member plaintiffs allege personal injury also remains, in accordance with sections III and V, *supra.* Count VII in which the plaintiffs allege property damage and the family member plaintiffs allege personal injury based on a nuisance created by Duracell remains in accordance with sections V and VI, *supra.* Count VIII in which the plaintiffs allege property damage and the family member plaintiffs allege personal injury based on the negligence of defendant Emhart remains in accordance with sections III and V, *supra.* Count IX in which the named plaintiffs allege property damage and the family member plaintiffs al-

---

**7.** The Tennessee Supreme Court did not grant certiorari and rule on the *Cooper* court's position on caveat emptor. In Tennessee the denial of certiorari may have precedential value. *See Pairamore v. Pairamore,* 547 S.W.2d 545 (Tenn. 1977); *see also* note 3 *supra.*

lege personal injury based on nuisance created by defendant Emhart remains in accordance sections III and V, *supra.* Count X, alleging ultra-hazardous activity, was not specifically addressed by either defendant, and therefore remains. Counts XI and XII which are based on fraudulent activities by both defendants remain in accordance with sections IIB and IV, *supra.*

Plaintiffs' complaint is cast as a class action complaint. Plaintiffs have filed a Rule 23(c)(1) motion that the Court enter an order determining that this action may be maintained as a class action. Fed.R.Civ.P. 23(c)(1). Pending resolution of these motions to dismiss, action on plaintiffs' motion for certification was stayed. Defendants will have forty-five days from the entry of the order accompanying this memorandum in which to respond to plaintiffs' motion to certify the class.