**E. Sue BULLION, Plaintiff,**

v.

**FORD MOTOR CO., Defendant.**

**No. 3:97–0491.**

United States District Court,
M.D. Tennessee,
Nashville Division.

Feb. 2, 1999.

David M. Zolensky, Nashville, TN, for E. Sue Bullion, plaintiff.

Carey P. DeDeyn, Lisa Combs Foster, Amy K. Doyle, Sutherland, Asbill & Brennan, Atlanta, GA, for Ford Motor Company, defendant.

## MEMORANDUM

ECHOLS, Chief Judge.

Presently pending before the Court is Defendant's Motion for Summary Judgment (Docket Entry No. 24), to which

Plaintiff has responded in opposition. For the reasons explained herein, the Court hereby GRANTS IN PART and DENIES IN PART Defendant's Motion. In particular, the Court GRANTS Defendant's Motion as to Plaintiff's sexual discrimination claim for disparate treatment regarding work assignments and as to Plaintiff's outrageous conduct state law claim. Accordingly, those claims are DISMISSED. The Court, however, DENIES Defendant's Motion as to Plaintiff's sexually hostile work environment claim.

## I.

Plaintiff E. Sue Bullion filed the present action on May 8, 1997, alleging that Defendant Ford Motor Company discriminated against her on account of her sex in violation of Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e to 2000e–17, as well as the Tennessee Human Rights Act ("THRA"), Tenn.Code Ann. §§ 4–21–101 to –1004.[1] In particular, Plaintiff claims (1) that she was subjected to a sexually hostile work environment while working for Defendant, and (2) that she was discriminated against on account of her sex with respect to work assignments made at the plant. In addition, Plaintiff raises a state law tort claim for outrageous conduct. In answer to Plaintiff's first discrimination claim, Defendant asserts that the conduct complained of by Plaintiff was not sufficiently severe or pervasive to constitute sexual harassment. As to Plaintiff's second discrimination claim, Defendant contends that Plaintiff has not suffered an adverse employment action and that Plaintiff has no evidence to support her claim that men were given preferential treatment. Finally, with respect to Plaintiff's state law tort claim, Defendant contends that the conduct at issue does not rise to the level of outrageousness. Accordingly, Defendant asks the Court to dismiss Plaintiff's claims as a matter of law.

## II.

In ruling on a motion for summary judgment, this Court must construe the evidence produced in the light most favorable to the non-moving party, drawing all justifiable inferences in his or her favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party may obtain summary judgment if the evidentiary material on file shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of satisfying the court that the standards of Rule 56 have been met. See Martin v. Kelley, 803 F.2d 236, 239 n. 4 (6th Cir.1986). The ultimate question to be addressed is whether there exists any genuine issue of material fact which is disputed. See Anderson, 477 U.S. at 248, 106 S.Ct. 2505. If so, summary judgment dismissal is inappropriate.

## III.

When viewed in a light favorable to Plaintiff, the facts and circumstances giving rise the present cause of action are as follows: Plaintiff was hired in May of 1984 as a pipefitter in Defendant's Nashville glass plant. Plaintiff, the only female pipefitter in the plant, continues to work for Defendant to this day. At the time she was hired, Plaintiff was not offered any specific position or work assignment within the plant. Like other pipefitters, Plaintiff has worked at a variety of different job assignments during her employment. Plaintiff has never been terminated, or even threatened with termination, from her employment with Defendant. Indeed, Plaintiff has never been suspended, reprimanded,

---

**1.** The parties agree that Plaintiff's Title VII and THRA claims are, for all practical purposes, identical. See Campbell v. Florida Steel Corp., 919 S.W.2d 26, 31 (Tenn.1996); see also Frizzell v. Southwest Motor Freight, Inc., 906 F.Supp. 441, 444 (E.D.Tenn.1995) (holding that the THRA and Title VII "should be similarly construed since both [statutes] have the same purpose"). Thus, these claims will be analyzed together.

or disciplined by Defendant in any way. Moreover, Plaintiff has received all pay raises for which she was eligible.

Plaintiff's allegations of gender discrimination as to work assignments date back to 1984, shortly after she began working at the plant. Plaintiff contends that she frequently has been rotated among different departments at the plant, whereas similarly situated male employees either have not been moved or have been moved only at their pleasure. Plaintiff also complains that she has not always received assistance in performing her work assignments, has been assigned to work in an isolated areas of the plant, and was once asked to perform an assignment outside her craft. In short, Plaintiff claims that work assignments throughout her tenure have been characterized by efforts to isolate her, to placate her fellow workers who do not want to work with her, and to single her out for treatment different from that afforded to male pipefitters.

In addition to her complaints regarding unfavorable work assignments, Plaintiff also alleges that she was subjected to a sexually hostile work environment. Plaintiff cites a number of incidents to support this allegation. For example, Plaintiff claims that on one occasion in 1991 she was slapped on the buttocks by a co-worker. Plaintiff also claims she was told by a supervisor sometime in 1992 that women such as Plaintiff should not be "in the trades." In May of 1995, Plaintiff was told by a direct supervisor that he was going to "turn [her] over his knee and spank [her] fat ass until [his] handprints are all over it." In December of 1996, Plaintiff received two anonymous, obscene telephone calls at the plant in the space of two days. In the first phone call, the caller stated: "Old stinking pussy, go out there and lean over that rail, I want some of that pussy." In the second, the called said "suck my dick." During the latter phone call, Plaintiff claims that she could hear the laughter of several people in the background. Next, Plaintiff claims that she was subjected to repeated sexual remarks in December of 1996 by Larry Greenwood, a co-worker. In addition, sometime around March of 1997, Plaintiff's co-workers hung an offensive calendar on a wall outside Plaintiff's work area. The calendar contained pictures of nude and scantily clothed obese women. At about this same time, unknown co-workers drew several pictures of penises on one of her toolboxes and wrote "ain't no pipefitter" under her name on another toolbox. Plaintiff also asserts that she was forced to listen to derogatory comments made regarding another female employee, that she had to listen to co-workers and supervisors discuss "phone sex," and that a co-worker told her she smelled like she needed to take a "douche." Finally, Plaintiff alleges that an employee made comments regarding "where women belonged" and made additional comments regarding his own wife's inability, due to a hysterectomy, to "take care of her duties." Plaintiff contends that she complained to her supervisors of such conduct on numerous occasions but that Defendant failed to take prompt and appropriate remedial action.

In February of 1995, Plaintiff, with the assistance of union representatives at the plant, initiated a formal grievance against Defendant. In her grievance, Plaintiff alleged that she had not been treated fairly with respect to work assignments and that she had been forced to endure a sexually hostile work environment. Plaintiff contends that Defendant admitted during the grievance process that Plaintiff had been sexually harassed. In support of this assertion, Plaintiff cites the testimony of Johnny Martin, a union representative who participated in the discussions with Defendant. According to Mr. Martin:

The grievance that was filed by Ms. Bullion was the subject of numerous discussions between supervisory employees of Ford and union officials. These discussions lasted many months, and both union officials and Ford employees investigated the allegations made by Ms. Bullion....

In September 1995, and after Ms. Bullion's grievance had reached the third stage under the collective bargaining grievance process, Ford Company officials admitted during these discussions that supervisors of hourly employees, in particular supervisors of skilled trades employees, effectively were condoning gender discrimination between hourly co-workers through their passivity in enforcing Ford policy in this area.

To attempt to remedy this situation, Ford conducted training sessions in March 1996 to supervisors of hourly employees on the issues of sexual harassment. . . .

Affidavit of Johnny Martin at 2–3.

As further evidence of Defendant's admission of wrongdoing, Plaintiff has provided copies of two letters written by Paul Fitzpatrick. At the time the letters were written, Mr. Fitzpatrick served as the Hourly Personnel and Labor Relations Manager for Defendant's Glass Division. The first letter states that based in part on Plaintiff's comments, "it was concluded that the skilled trades work environment at [the Nashville glass plant] is hostile for skilled trades women and minorities." In the second, Mr. Fitzpatrick states: "I am belatedly responding to the thoughts you penned on a copy of my letter to Paul Gill about the sexual harassment issue at Nashville. Not to say we don't have issues at other Division locations, but Nashville needs special attention in the matter."

In early 1997, Plaintiff met with various representatives of Defendant concerning her continued treatment at the plant. On March 19, 1997, shortly after these meeting were held, Plaintiff filed her charge with the Equal Employment Opportunity Commission ("EEOC"). After receiving her right to sue letter from the EEOC, Plaintiff filed the present action.

### IV.

■ In her Complaint, Plaintiff initially alleges that she was subjected to a sexually hostile work environment during her employment with Defendant. To establish a prima facie case of hostile work environment harassment, Plaintiff must show (1) that she is a member of a protected class; (2) that she was subject to unwelcomed sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment unreasonably interfered with her work performance and created a hostile work environment; and (5) the existence of some basis for liability on the part of the employer. *Blankenship v. Parke Care Centers, Inc.,* 123 F.3d 868, 872 (6th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998); *Fleenor v. Hewitt Soap Co.,* 81 F.3d 48, 50 (6th Cir.1996); *Kauffman v. Allied Signal Inc.,* 970 F.2d 178, 183 (6th Cir.1992).

■ Defendant contends that Plaintiff's sexual harassment claim must be dismissed because the challenged conduct was not sufficiently severe or pervasive to create a hostile work environment, the fourth element of a prima facie case. Of course, not all offensive conduct is actionable under Title VII. Rather, the conduct complained of must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems Inc.,* 510 U.S. 17, 20, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). In determining whether the challenged conduct is sufficiently severe or pervasive to constitute actionable sexual harassment, courts consider (1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with an employee's work performance. *Harris,* 510 U.S. at 23, 114 S.Ct. 367.

■ Applying these factors to the present case, the Court finds that Plaintiff has produced sufficient evidence to create a genuine issue of material fact as to whether the challenged conduct was sufficiently

severe and pervasive to constitute hostile work environment harassment. Indeed, viewing the evidence in a light favorable to Plaintiff, it appears that Plaintiff was subjected to a wide range of inappropriate and often humiliating behavior over an extended period of time.[2] Plaintiff has been slapped on the buttocks, threatened with a spanking, and told that women should not be "in the trades." She has been subjected to two obscene and humiliating phone calls and has had to listen to co-workers and supervisors discuss phone sex. She was told on one occasion that she needed to take a "douche" and has been forced to listen to repeated sexual remarks concerning herself, at least one other female employee, and a co-worker's wife. In addition, Plaintiff's co-workers hung a calendar containing nude and semi-nude women in the workplace and drew pictures of penises on Plaintiff's toolbox.

Although each instance of misconduct, standing alone, may not have been sufficient to support a Title VII claim, the Court finds that the cumulative effect of these incidents raises serious questions as to whether a sexually hostile work environment existed at Defendant's Nashville glass plant. In addition, Plaintiff produced evidence suggesting that Defendant may have admitted at one point that such a hostile environment did in fact exist. Based on the foregoing, the Court finds that Plaintiff has provided sufficient evidence to raise a genuine issue of material fact concerning the condition of her working environment, thus making Defendant's Motion for Summary Judgment inappropriate.

## V.

Next, Plaintiff alleges that she was treated differently on the basis of her sex with respect to work assignments at the plant. Specifically, Plaintiff claims that (1) she regularly was reassigned to different areas of the plant while her male counterparts either were not moved or were moved only with their assent; (2) she permanently was assigned tasks that were ordinarily rotated among all pipefitters; (3) she was asked to perform job assignments without help while her male counterparts received assistance; (4) she was assigned to work with an individual with whom no other pipefitter would work; (5) she was assigned tasks outside her area that were difficult and undesirable; (6) she was given assignments designed to isolate her from the other pipefitters; (7) on one occasion in 1986 she was asked to perform a sheet metal job outside her craft; (8) she was assigned "make work" tasks designed

---

**2.** Defendant contends in a footnote that some of the incidents cited by Plaintiff are barred by the applicable statute of limitations. Plaintiff asserts, however, that these incidents may be considered by the Court pursuant to the continuing violation doctrine. Defendant makes no response to this contention. Addressing the continuing violation doctrine in the context of sexual harassment, one court recently stated:

Sexual harassment serious enough to constitute unlawful discrimination on grounds of sex is often a cumulative process rather than a one-time event. In its early stages it may not be diagnosable as sex discrimination, or may not cross the threshold that separates the nonactionable from the actionable, or may not cause sufficient distress to be worth making a federal case out of, or may not have gone on long enough to charge the employer with knowledge and a negligent failure to take effective remedial measures.... We do not want to encourage premature or precipitate litigation. If the victim of sexual harassment sues as soon as the harassment becomes sufficiently palpable that a reasonable person would realize she had a substantial claim under Title VII, then she sues in time and can allege as unlawful conduct the entire course of conduct that in its cumulative effect has made her working conditions unbearable.

*Galloway v. General Motors Service Parts Operations*, 78 F.3d 1164, 1167 (7th Cir.1996). Plaintiff maintains that she filed the present action once the cumulative effect of misconduct adequately demonstrated a pattern of debasement toward women. Given the present state of the record, the Court finds Plaintiff's position persuasive for purposes of the pending motion. Accordingly, the Court will now consider all of the incidents cited by Plaintiff. The Court may be willing to reconsider this initial determination if an appropriate motion in limine is filed prior to trial.

to keep her busy after a co-worker complained that Plaintiff was not working her full share; and (9) her co-workers would on occasion take credit for work performed by Plaintiff and wrongfully deprive Plaintiff of opportunities to work overtime.

■ To prevail on a disparate treatment claim under Title VII, a plaintiff must first establish a prima facie case by demonstrating that he or she (1) is a member of a protected class; (2) is qualified for his or her position; (3) suffered an adverse employment action; and (4) was treated worse than similarly situated employees outside the protected class. *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir.1992) As to the fourth element, the Sixth Circuit has held that in order for employees outside the protected class to be deemed similarly situated, the plaintiff must show that the alleged comparables are similarly situated in all relevant respects. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998); *Pierce v. Commonwealth Life Insurance Co.*, 40 F.3d 796, 802 (6th Cir. 1994).

Defendant concedes that the first and second elements of a prima facie case have been met, but maintains that Plaintiff cannot establish the third and fourth required elements. In short, Defendant contends that the incidents cited by Plaintiff do not amount to adverse employment actions and that, even if they did, Defendant did not treat Plaintiff, a female, different from similarly situated male employees.

In her response to Defendant's Motion, Plaintiff makes numerous allegations that she was treated differently from other male employees. Plaintiff, however, fails to identify a single male employee who received more favorable treatment than she did. Instead, Plaintiff seems to argue that Defendant has produced no evidence to indicate that it treated Plaintiff as well as comparable male employees. Plaintiff has the burden to respond to a motion for summary judgment under the Federal Rules. Pursuant to Rule 56 of the Federal Rules of Civil Procedure:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial. *If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.*

Fed.R.Civ.P. 56(e) (emphasis added). The United States Supreme Court explains further that the non-moving party's burden of providing specific facts demonstrating that there remains a genuine issue for trial is triggered once the moving party "show[s]—that is, point[s] out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ Defendant has satisfied its burden of "pointing out" the lack of evidence to support Plaintiff's disparate treatment allegations. Defendant not only asserts that Plaintiff was treated as well as comparable male employees but also provides evidence to support its assertion. Plaintiff, on the other hand, has come forward with nothing other than her bald allegations to support her contention that comparable male employees were treated more favorably than she was. Plaintiff has not named any comparable male employee who was favored over her. Without specific facts to support the fourth element of a prima facie case, Plaintiff's disparate treatment claim must fail as a matter of law. *Jones v. Bessemer Carraway Medical Center*, 137 F.3d 1306, 1311 (11th Cir.1998) ("If Plaintiff fails to identify similarly situated, nonminority employees who where treated more favorably, her case must fail because the burden is on her to establish a prima facie case."), *superseded in part on other grounds*, 151 F.3d 1321 (11th Cir.1998);

*see also Ercegovich,* 154 F.3d at 351; *Mitchell,* 964 F.2d at 583.

## VI.

█ Finally, Plaintiff contends that Defendant's actions support a claim for outrageous conduct. Under Tennessee law, there are three essential elements to a claim of outrageous conduct[3]: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." *Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn.1997). As to the type of conduct covered by the tort of outrageous conduct, the Tennessee Supreme Court has stated:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct is characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous."

*Bain,* 936 S.W.2d at 623 (internal citations omitted).

█ The parties initially dispute whether the actions of Defendant's employees toward Plaintiff can be regarded as "atrocious" and "utterly intolerable." However, even if the Court assumes that such conduct can be considered "outrageous," Plaintiff has provided no basis for imposing vicarious liability on Defendant for the intentional misconduct of its em-

ployees. As Defendant correctly observes: "[W]ith respect to the intentional torts of one employee against another employee, an employer cannot be held liable for such actions unless the employer intended the tortious conduct to occur." *Raines v. Shoney's, Inc.,* 909 F.Supp. 1070, 1082 (E.D.Tenn.1995) (citing *Williams v. Smith,* 222 Tenn. 284, 435 S.W.2d 808, 810 (1968)). On the present state of the record, the Court can find no evidence to suggest that Defendant *intended* the tortious conduct alleged by Plaintiff to occur. Without a basis for holding Defendant vicariously liable for the conduct of its employees, the Court must dismiss Plaintiff's outrageous conduct claim as a matter of law.

## VII.

Based on the foregoing reasons, the Court hereby GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment. In particular, the Court GRANTS Defendant's Motion as to Plaintiff's sexual discrimination claim for disparate treatment regarding work assignments and as to Plaintiff's outrageous conduct state law claim. Accordingly, those claims are DISMISSED. The Court, however, DENIES Defendant's Motion as to Plaintiff's sexually hostile work environment claim.

## *ORDER*

Presently pending before the Court is Defendant's Motion for Summary Judgment (Docket Entry No. 24), to which Plaintiff has responded in opposition. For the reasons explained in the Memorandum entered contemporaneously herewith, the Court hereby GRANTS IN PART and DENIES IN PART Defendant's Motion. In particular, the Court GRANTS Defendant's Motion as to Plaintiff's sexual discrimination claim for disparate treatment regarding work assignments and as to

---

**3.** Plaintiff refers to this cause of action in her Complaint as intentional infliction of emotional distress. However, intentional infliction of emotional distress and outrageous con-

duct are not two separate torts, but are simply different names for the same cause of action. *See Bain v. Wells,* 936 S.W.2d 618, 622 at n. 3 (Tenn.1997).

Plaintiff's outrageous conduct state law claim. Accordingly, those claims are hereby DISMISSED. The Court, however, DENIES Defendant's Motion as to Plaintiff's sexually hostile work environment claim.

This case is hereby returned to the Magistrate Judge for further case management pursuant to Local Rule 11.

It is so ORDERED.